IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

CHERRY POPE,

     Plaintiff,

vs.

USAA GENERAL INDEMNITY
COMPANY,

     Defendant.

_____

## USAA GENERAL INDEMNITY COMPANY'S
## NOTICE OF REMOVAL

Defendant USAA GENERAL INDEMNITY COMPANY ("USAA") gives notice of the removal to this Court of the case styled <u>CHERRY POPE V. USAA GENERAL INDEMNITY COMPNAY</u>, Case No. 2022-CA-001788, filed in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida.  As grounds for this removal, USAA states the following:

1.     On May 26, 2022, Plaintiff CHERRY POPE ("Plaintiff") filed her Complaint in the Circuit Court of the Tenth Judicial Circuit in and for Polk County seeking damages against USAA for uninsured motorist ("UM") benefits and statutory bad faith. *The Complaint is attached as Exhibit "A."*

2.     USAA was served with the Complaint on June 8, 2022.

3.     USAA issued an Automobile Policy which provided insurance to Lenwood Arnez Pope with stacked uninsured motorist benefits, in the amount of $50,000 per person multiplied by two vehicles, for a total amount of $100,000 per person ("Policy"). *The Declarations Page of the Policy is attached to as Exhibit "B."*

4.     Plaintiff is a listed operator of the vehicles on the Policy. *Id.*

5.     The vehicles are garaged at the address listed on the Policy. Id.

6.     On July 21, 2018, Plaintiff allegedly sustained injuries due to a motor vehicle accident with a negligent driver. *See* Exhibit "A", at ¶13.

7.     According to Plaintiff's Complaint, she is a resident of Polk County. *Id.*, ¶ 3.

8.     The Accident Report from the motor vehicle accident referenced in the Complaint shows Plaintiff's address to be 1301 Valley Grove Drive, Seffner, Florida 33584. *See* Exhibit "C."

9.     A public records search shows that Plaintiff is registered to vote in the State of Florida and holds a Florida Driver's License. *See* Exhibit "D."

10.    On January 11, 2022, Plaintiff's counsel provided USAA with a pre-suit demand in the amount of $100,000.  *See* Exhibit "E."  The pre-suit demand also alleged Plaintiff suffered permanent injuries to her cervical and lumbar spine; has

incurred $43,764.81 in medical expenses; has a recommendation for a L4-L5 posterior laminectomy; and has a recommendation anterior cervical discectomy and cervical decompression surgery at C3-6 with an estimated cost of $66,000. *Id.*

11.    Further, Plaintiff filed a Civil Remedy Notice which claims, among other things, Plaintiff "sustained injuries, permanent in nature to her C-Spine and Lumbar Spine"; "sustained over $43,000 in medical treatment"; and "was out of work on disability".  *See* Exhibit "F." Therefore, Plaintiff demanded $100,000 from USAA. *Id.*

12.    Defendant USAA removes this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

13.    "A district court has original jurisdiction over cases in which the parties are completely diverse and the amount in controversy exceeds $75,000."  *Noyes v. Universal Underwriters Ins. Co.*, 3 F. Supp. 3d 1356, 1359 (M.D. Fla. 2014).  *See also Lett v. Wells Fargo Bank, N.A.*, 233 F. Supp. 3d 1330, 1335 (S.D. Fla. 2016).

## I.    **Plaintiff and USAA are of diverse citizenship.**

14.    Plaintiff is a citizen of Polk County, Florida according to the Complaint, the Policy Declarations, and the Accident Report. *See* Ex. A, ¶ 3, Exhibit B, and Exhibit C, p. 3, Exhibit "D."

15.    USAA is a foreign corporation, incorporated in the State of Texas, with its principal place of business in San Antonio, Texas.

16.     Thus, for the purpose of determining whether diversity jurisdiction exists, USAA is a citizen of Texas.  See 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

## II.     The amount in controversy is in excess of $75,000.00, exclusive of costs and interest.

17.     For purposes of determining whether the $75,000 threshold for diversity jurisdiction exists, courts have determined that jurisdiction is proper where the jurisdictional amount is "facially apparent" from the complaint itself.  *Williams v. Best Buy Co.*, 269 F.3d 1316 (11th Cir. 2001).

18.     Plaintiff's Complaint merely alleges that it is seeking in excess of $30,000, the jurisdictional amount in Florida Circuit Court. However, Plaintiff has submitted the full amount of damages from USAA stems from the negligence of an uninsured motorist (Count I) and USAA's alleged mishandling of the claim (Count II).  As part of Plaintiff's claim for damages, the Complaint states that USAA "breached its duties of good faith by…failing to tender the policy limits in a timely manner, especially in light of the serious and permanent injuries suffered by the Plaintiff, the value of which were clearly in excess of the policy limits…" Ex. "A" at ¶ 21.

19.     Moreover, Plaintiff's Civil Remedy Notice of Insurer Violations (CRN) and Pre-Suit Demand both outline Plaintiff's alleged permanent injuries and claim the incurred medical expenses ($43,764.81), plus the cost of Plaintiff's recommended surgeries ($66,000) total are nearly $100,000. *See* Ex. "E" and Ex. "F." Thus, Plaintiff demanded the policy limits of $100,000 from USAA. *Id.*

20.     Therefore, the amount in controversy exceeds the $75,000 jurisdictional amount, exclusive of costs and interest.

### III.   <u>Conclusion</u>

21.     This Notice of Removal is timely filed within thirty days of the date of service which occurred on June 8, 2022.  28 U.S.C. §1446(b); Fed. R. Civ. P. 6(a)(1).

22.     Accordingly, this case is removable pursuant to 28 U.S.C. § 1441 because it is an action between citizens of different states (Plaintiff, Florida and USAA, Texas) and the amount in controversy clearly exceeds the sum of $75,000.00.

23.     Venue is proper in this Court because the case is being removed from the Circuit Court of the Tenth Judicial Circuit of Florida.  28 U.S.C. §§ 1441(a) and 1446(a).

24.     USAA will file with the Clerk of Court for the Circuit Court in and for Polk County, Florida, a Notice of Filing Notice of Removal pursuant to 28 U.S.C. §

1446(d).  *Attached hereto is the Notice to File Notice of Removal is attached hereto as Exhibit "G."*

25.     Copies of all available process, pleadings, and orders served upon or by USAA in the state court case are attached hereto as *Exhibit "H."  A copy of the Polk County Clerk of Court's docket is attached hereto as Exhibit "I."*

**WHEREFORE**, Defendant USAA GENERAL INDEMNITY COMPANY removes this action from the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida to this Honorable Court and respectfully request that this Honorable Court assume jurisdiction of this action pursuant to 28 U.S.C. §§ 1332, 1441.

Respectfully submitted this   8th    day of July, 2022.

                                        **BOYD & JENERETTE, P.A.**

                                        AMANDA L. KIDD
                                        Florida Bar No. 93229
                                        KRISTEN M. VAN DER LINDE
                                        Florida Bar No. 0964573
                                        201 North Hogan Street, Suite 400
                                        Jacksonville, Florida 32202
                                        904-353-6241 - Telephone
                                        904-493-3739 - Facsimile
                                        *Attorneys for USAA General
                                        Indemnity Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF, on this 8th day of July, 2022.

_____

**ATTORNEY**

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

<div style="border:1px solid">EXHIBIT<br>**A**</div>

**CHERRY POPE,**

     **Plaintiff,**

**v.**                                         **CASE NO.:**

**USAA GENERAL INDEMNITY COMPANY,**

                                                 **JURY TRIAL DEMANDED**

     **Defendant.**

————————————————/

## COMPLAINT

COMES NOW the Plaintiffs, CHERRY POPE, by and through her undersigned counsel and sues the Defendant, USAA GENERAL INDEMNITY COMPANY, and alleges:

## GENERAL ALLEGATIONS

1.     This is an action for damages arising from a breach of contract of uninsured/underinsured motorist coverage in excess of Thirty Thousand ($30,000.00) dollars.

2.     Venue for this action is the Tenth Judicial Circuit, in and for Polk County, State of Florida, Civil Division.

3.     That at all times material hereto, the Plaintiffs, CHERRY POPE, is a resident of Polk County, Florida.

4.     That all times material hereto, the Defendant, USAA GENERAL INDEMNITY COMPANY, was licensed to conduct business and sell insurance in the State of Florida, including those containing coverage for uninsured/underinsured motorist coverage.

5.     At all times material hereto, Defendant, USAA GENERAL INDEMNITY COMPANY, insured Plaintiff, CHERRY POPE, through a policy of insurance containing

uninsured/underinsured motorist coverage. Said policy, number ███████████ was valid and in force on the date of this accident, July 21, 2018.

6.     A copy of the insurance policy which is the subject of this lawsuit is attached as Exhibit "A."

<div align="center">

**COUNT I-UNINSURED/UNDERINSURED MOTORIST CLAIM
AGAINST DEFENDANT, USAA GENERAL INDEMNITY COMPANY**

</div>

7.     Plaintiff, CHERRY POPE, iterates and re-alleges all of the allegations contained in paragraphs 1 through 6 of this complaint as though fully restated herein.

8.     That on or about July 21, 2018, Plaintiff, CHERRY POPE, was a passenger in a motor vehicle that was stopped near the intersection of South Florida Avenue and Polk Parkway in Lakeland, Polk County Florida.

9.     That on or about July 21, 2018, tortfeasor, Dylan Kristoph Bivens, was operating his motor vehicle and was traveling directly behind the plaintiff vehicle near the intersection of South Florida Avenue and Polk Parkway in Lakeland, Polk County, Florida.

10.     That at said time and place, tortfeasor, Dylan Kristoph Bivens, did operate, maintain and/or control said motor vehicle in such a negligent manner, so as to cause his motor vehicle to collide with the rear of the Plaintiff's motor vehicle.

11.     The tortfeasor, Dylan Kristoph Bivens, was uninsured or underinsured.

12.     Plaintiff has complied with all conditions precedent for recovering uninsured/underinsured motorist benefits under the above policy and the Defendant has failed to fairly resolve the claim for damages sustained, when it could have and should have done so.

13.     That, as a result of the negligence of the uninsured/underinsured tortfeasor, Dylan Kristoph Bivens, Plaintiff, CHERRY POPE, has suffered in the past, and will continue to suffer in the future, the following damages:

a.     Permanent personal injuries within a reasonable degree of medical probability;

b.     Pain and suffering; past, present and future;

c.     Physical limitations and impairments;

d.     Decreased capacity for the enjoyment of life and decrease of life choices;

e.     Loss of earnings, past, present, and future; and

f.     Medical expenses for the care and treatment of her injuries.

14.    As a result of Defendant's breach of the uninsured/underinsured motorist conditions of the insurance policy herein at issue, Plaintiff has been damaged by not receiving compensation for her personal injuries as alleged above under the terms of the insurance policy.

15.    The injuries consist in whole or in part of a significant and permanent loss of bodily functions, and a permanent injury within a reasonable degree of medical probability.  However, should it be determined that any such bodily injuries are not permanent, then Plaintiff, CHERRY POPE, claims entitlement to all damages resulting from non-permanent injuries sustained and which are based upon benefits therefore not paid by Personal Injury Protection (No Fault Benefits).

WHEREFORE, the Plaintiff, CHERRY POPE, demands judgment against Defendant, USAA GENERAL INDEMNITY COMPANY, for damages plus prejudgment interest, the costs of this action, attorney's fees, if appropriate, and such other and further relief as this Court deems just and proper and further request trial by jury on all issues so triable.

### COUNT II—BAD FAITH (USAA GENERAL INDEMNITY COMPANY )

16. The Plaintiff, CHERRY POPE, realleges and incorporates all the allegations contained in paragraphs one (1) through fifteen (15) above as though fully restated herein.

3

17. Upon the issuance or renewal of said insurance policy number ███████████ to the Plaintiff, CHERRY POPE, Defendant, USAA GENERAL INDEMNITY COMPANY , became obligated to comply with the duties prescribed in Section 624.155 and Section 626.9541, Florida Statutes.

18. The Plaintiff, CHERRY POPE, has performed all conditions precedent to the bringing of this action pursuant to 624.155, Florida Statutes, by providing written notice of the Defendant's violations pursuant to the Civil Remedy Notice of Insurer Violation filed with the State of Florida, Department of Financial Services and to the Defendant, USAA GENERAL INDEMNITY COMPANY. A copy of the Civil Remedy Notice is attached hereto as Exhibit "B".

19. Upon the issuance or renewal of the policy and pursuant to Section 624.155, the Defendant had a continuing duty to act fairly and honestly toward its insured, CHERRY POPE, and to attempt to settle the claim of CHERRY POPE when under all the circumstances it could and should have done so, had it acted fairly and honestly toward CHERRY POPE, and with due regard for her interests.

20. At all material times, Defendant knew that the combined inadequacy of Bodily Injury Liability carried by underinsured tortfeasor, Dylan Kristoff Bivens, were inadequate to compensate CHERRY POPE for the serious and permanent injuries and damages that she sustained in the July 21, 2018, collision.

21. The Defendant, USAA GENERAL INDEMNITY COMPANY, breached its continuing duties under Section 624.155, by not attempting in good faith to settle its insured's claims when under all the circumstances it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests. The Defendant breached its duties of good faith by, including but not limited to, the following acts and/or omissions: a. improperly

4

handling the claim; b. refusing to settle the claim in a timely manner; c. failing to tender the policy limits in a timely manner, especially in light of the serious and permanent injuries suffered by the Plaintiff, the value of which were clearly in excess of the policy limits; and d. failing to promptly settle the Plaintiff's claim when the obligation to settle the claim had become reasonably clear.

22. The Defendant, USAA GENERAL INDEMNITY COMPANY, also failed to cure the violations under Section 624.155, Florida Statutes, by failing to pay all sums owed within sixty (60) days of receipt of the Civil Remedy Notice Letter and by failing to otherwise correct the circumstances giving rise to the violation.

23. All the continuing acts of bad faith by the Defendant, USAA GENERAL INDEMNITY COMPANY, caused the Plaintiff's damages, including, but not limited to, mental pain and suffering, emotional distress, humiliation, anguish, loss of enjoyment of life, economic losses, costs and attorney's fees.

24. Pursuant to sections 627.727(10) and 624.155, Florida Statutes, in this action, Plaintiff is entitled to recover the full amount of damages caused by the negligence of the uninsured tortfeasor, including the amount of damages in excess of the $100,000 stacked underinsured motorist policy limits.

25. Additionally, Plaintiff seeks to recover her attorney's fees against Defendant, USAA GENERAL INDEMNITY COMPANY, pursuant to Section 627.428 and Section 624.155, Florida Statutes.

WHEREFORE, the Plaintiff, CHERRY POPE, demands judgment against Defendant, USAA GENERAL INDEMNITY COMPANY, for damages plus prejudgment interest, the costs of this action, attorney's fees, if appropriate, and such other and further relief as this Court deems just and proper and further request trial by jury on all issues so triable.

2022CA-001788-0000-00          Received in Polk 05/26/2022 04:01 PM

Respectfully submitted this 26th day of May 2022.

<div style="margin-left:50%">

**_John C. Distasio, Esq._**
John Distasio, Esq.
Florida Bar No. 096328
Chris Limberopoulos, Esq.
Florida Bar No. 341126
The Florida Law Group
407 N Howard Ave #100
Tampa, FL 33606
john@floridalawgroup.org
service@floridalawgroup.org
(813) 463-8880
*Attorneys for Plaintiff*

</div>

6

# EXHIBIT "A"

7

USAA General Indemnity Company

# STATEMENT OF
# LIABILITY REQUEST

MELISSA M HILL
THE FLORIDA LAW GROUP
407 N HOWARD AVE STE 100
TAMPA FL 33606-1575

## Review Our Response

December 7, 2021

Dear Melissa M Hill,

As you requested, we've attached a Statement of Liability Insurance form and a copy of the policy.

| | |
|---|---|
| Your client: | Cherry Q Pope |
| USAA policyholder: | Lenwood A Pope |
| Claim number: | 025770959-009 |
| Date of loss: | July 21, 2018 |
| Loss location: | Lakeland,Florida |
| Our tax ID number: | 74-1718283 |

## How to Contact Us

Please send any correspondence or questions to us using one of the following options and include the claim number on each page mailed or faxed:

| | | |
|---|---|---|
| ✉ | Address: | Auto Injury Solutions<br>Attn: USAA Medical Mail Department<br>P.O. Box 26001<br>Daphne, AL 36526 |
| 🖨 | Fax: | 866-828-2330 |
| ☎ | Phone: | 1-800-531-8722, ext 44388 |

Sincerely,



Steven Cobb
Southeast Region
USAA General Indemnity Company

Attached: Statement of Liability Insurance
          DEC

025770959 - 009 - 7991 - 51

54709-0920

USAA Confidential

901119caf74f35c

**2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM**

901119caf74f35c


USAA Confidential



USAA General Indemnity Company

# STATEMENT OF LIABILITY INSURANCE

I, Apryl Saunders, Claims Manager, state the following concerning each known policy of insurance, including Excess or Umbrella insurance:

| | |
|---|---|
| The Name of Insurer: | USAA General Indemnity Company |
| The Name of Each Insured: | Lenwood A Pope |
| Claim Number: | 025770959 - 009 |
| Policy Number: | 025770959 - 7102 |
| Policy Effective Dates: | 07-06-2018 TO 01-06-2019 |
| Limits of Liability Coverage: | BI $50/100K, PD $50K |
| Umbrella: | No |
| Umbrella Limits: | N/A |
| Umbrella Policy Effective Dates: | |
| Additional Covered Persons: | Cherry Pope |
| Policy or Coverage Defenses: | This loss does not involve a covered automobile on this policy |

Under penalties of perjury, I declare that I have read the foregoing statement of liability and that the facts stated in it are true.

E-SIGNED by Apryl Saunders
on 2021-12-10 20:07:54 GMT

Apryl Saunders
Claims Manager
USAA General Indemnity Company

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

Sworn to and subscribed before me this _____ day of _____, 20_____ by Apryl Saunders.
Day                           Month                         Year

_____
SIGNATURE OF NOTARY PUBLIC

Personally Known __X__ OR Produced Identification _____
Type of Identification Produced _____

901119caf74f35c                    USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

3495-02-h1-0000  USAA Confidential

1901119caf74f35c

**2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM**

USAA GENERAL INDEMNITY COMPANY

ADDL INFO ON NEXT PAGE    MAIL MCH-M-I

(A Stock Insurance Company)
9800 Fredericksburg - San Antonio, Texas 78288

| State | 05,07 | Veh | POLICY NUMBER |
| FL | 461461 | Ter | 02577 09 59G 7102 2 |

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

POLICY PERIOD: (12:01 A.M. standard time)
EFFECTIVE JUL 06 2018 TO JAN 06 2019

**Named Insured and Address**

LENWOOD ARNEZ POPE

OPERATORS
01 LENWOOD ARNEZ POPE
02 CHERRY QUINN POPE
04 LYNQUISHIA Q POPE

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* Miles to Wrk | WrkNo100 Days per Week |
|---|---|---|---|---|---|---|---|---|---|
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | | P | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | | P | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/C=Work/School  B=Business  F=Farm  P=Pleasure
VEH 05   SEFFNER FL 33584-4567
VEH 07   SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | | |
| BODILY INJURY EA PER $ 50,000 | | | | | | | | | |
| EA ACC $ 100,000 | | | 170.78 | | 145.04 | | | | |
| PROPERTY DAMAGE EA ACC $ 50,000 | | | 106.03 | | 82.39 | | | | |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | | |
| MAXIMUM BENEFITS $10,000 | | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | | | | | | | | |
| WORK LOSS N/A FOR NAMED INSD | | | | | | | | | |
| AND RESIDENT RELATIVES | | D 250 | 88.84 | D 250 | 126.14 | | | | |
| PART C - UNINSURED MOTORISTS STACKED | | | | | | | | | |
| BODILY INJURY EA PER $ 50,000 | | | | | | | | | |
| EA ACC $ 100,000 | | | 248.26 | | 256.35 | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | | |
| COMPREHENSIVE LOSS ACV LESS | | D 500 | 37.87 | D 500 | 70.50 | | | | |
| COLLISION LOSS ACV LESS | | D 500 | 99.61 | D 500 | 185.09 | | | | |
| | | | | | | | | | |
| TOTAL PREMIUM - SEE FOLLOWING PAGE(S) | | | | | | | | | |

LOSS PAYEE
VEH 05   PLATINUM AUTO FINANCE, CLEARWATER  FL
VEH 07   TD BANK NA, LEWISTON  ME

ENDORSEMENTS: ADDED 07-06-18 - RSGPFL(01)
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- 5100FL(02)   ACCPOR(01)   A402FL(01)
INFORMATION FORMS: IIRSGPFL(01)   663FL(04)   999FL(03)
04  1
05 RMM58 00000          07 RMF58 00000

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                  on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53584-05-12

901119ca83d885b

USAA Confidential

**USAA**  (A Stock Insurance Company)
9800 Fredericksburg · San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

| State | 05 07 | | Veh. | POLICY NUMBER |
|---|---|---|---|---|
| FL | 461 461 | | Terr. | 02577 09 59G 7102 2 |

POLICY PERIOD:   (12:01 A.M. standard time)
EFFECTIVE JUL 06 2018 TO JAN 06 2019

**Named Insured and Address**

LENWOOD ARNEZ POPE

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | VEH USE* SYM | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | P | | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *WC=Work/School B=Business F=Farm P=Pleasure
VEH 05    SEFFNER FL 33584-4567
VEH 07    SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
| ECONOMY CLASS | | 23.66 | | 26.20 | | | | |
| STANDARD CLASS | | | | | | | | |
| TOWING AND LABOR | | 9.00 | | 9.00 | | | | |
| SELECTED VEHICLE FEATURES (LISTED | | 10.18 | | 20.46 | | | | |
| ON THE FEATURES DECLARATION) | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 794.23 | | 921.17 | | | | |

6 MONTH PREMIUM $ 1715.40
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

EARNED ACCIDENT FORGIVENESS APPLIES WITH FIVE YEARS CLEAN DRIVING WITH USAA.
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
VEH 05 - MEDICAL PAYMENTS
VEH 07 - MEDICAL PAYMENTS

| 05 | RMM58000D0 | | 07 | RMF58000D0 | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                    on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53384-05-12
901119caf5dd85b

USAA Confidential



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

# FLORIDA AUTO POLICY

## READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

* By purchasing this policy you are a member of USAA and are subject to its bylaws.

* This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

* The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | DECLARATIONS PAGE |
|---|---|
| | Named Insured and Address |
| | Policy Period |
| | Operators |
| | Description of Vehicle(s) |
| | Coverages, Amounts of Insurance and Premiums |
| | Endorsements |
| Beginning on Page  3 | **Agreement and Definitions** |
| Part A  4 | **Liability Coverage** |
| | Definitions |
| | Insuring Agreement |
| | Bodily Injury Liability Coverage and Property Damage Liability Coverage |
| | Limit of Liability |
| | Supplementary Payments |
| | Exclusions |
| | Out of State Coverage |
| | Financial Responsibility Required |
| | Other Insurance |
| Part B-1 8 | **Personal Injury Protection Coverage** |
| | Definitions |
| | Insuring Agreement |
| | Limit of Liability |
| | Application of Deductible |
| | Exclusions |
| | Other Insurance |
| Part B-2 14 | **Medical Payments Coverage** |
| | Definitions |
| | Insuring Agreement |
| | Limit of Liability |
| | Exclusions |
| | Other Insurance |
| | Special Provisions |

(Quick Reference continued on Page 2)

5100FL(02) Rev. 10-12

54109-0912
Page 1 of 34

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

| Part C | 17 | Uninsured Motorists Coverage | | Part E | 26 | General Provisions |
|---|---|---|---|---|---|---|
| | | Definitions | | | | Bankruptcy |
| | | Insuring Agreement | | | | Changes |
| | | Limit of Liability (Stacked) | | | | Conformity to Law |
| | | Exclusions | | | | Duties After an Accident or Loss |
| | | Other Insurance | | | | Legal Action Against Us |
| | | Non-Duplication | | | | Mediation |
| | | | | | | Misrepresentation |
| Part D | 21 | Physical Damage Coverage | | | | Non-Duplication of Payment |
| | | Definitions | | | | Our Right to Recover Payment |
| | | Insuring Agreement | | | | Ownership |
| | |   Comprehensive Coverage | | | | Policy Period and Territory |
| | |   Collision Coverage | | | | Reducing the Risk of Loss and |
| | |   Rental Reimbursement Coverage | | | |   Other Benefits |
| | |   USAA Roadside Assistance | | | | Spouse Access |
| | | Limit of Liability | | | | Termination |
| | | Payment of Loss | | | | Transfer of Your Interest in this |
| | | Loss Payable Clause | | | |   Policy |
| | | Waiver of Collision Deductible | | | | Two or More Auto Policies |
| | | Exclusions | | | | |
| | | Mandatory Pre-Insurance Inspection | | | | |
| | | No Benefit to Bailee | | | | |
| | | Other Sources of Recovery | | | | |
| | | Appraisal | | | | |

)901119caf66997b

3495-02-b1-000 USAA Confidential

# FLORIDA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We," "us,"** and **"our"** refer to the Company providing this insurance.

C. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing, or storing vehicles.

D. **"Bodily injury"** (referred to as BI).

1. **"Bodily injury"** means bodily harm, sickness, disease, or death.

2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. **"Driving contest or challenge"** includes, but is not limited to:

1. A competition against other people, vehicles, or time; or

2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. **"Family member"** means a person related to **you** by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

G. **"Fungi"** means any type or form of fungi, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi.**

H. **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. **"Motorcycle"** means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

J. **"Newly acquired vehicle."**

1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

a. A private passenger auto, pickup, **trailer,** or **van;**

b. A **miscellaneous vehicle** that is not used in any business or occupation; or

c. A **motorcycle,** but only if a **motorcycle** is shown on the current Declarations.

5100FL(02) Rev. 10-12

i901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

2. We will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If **your** policy does not provide Comprehensive Coverage or Collision Coverage, we will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under J.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If **you** wish to continue coverage for the **newly acquired vehicle** beyond this 30–day period, **you** must request it during this 30–day period, and we must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30–day period, any coverage that we agree to provide will be effective at the date and time of **your** request unless we agree to an earlier date.

K. "**Occupying**" means in, on, getting into or out of.

L. "**Property damage**" (referred to as PD).

1. "**Property damage**" means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD–ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M. "**Trailer**" means a vehicle designed to be pulled by a private passenger auto, pickup, **van** or **miscellaneous vehicle**. It also means a farm wagon or implement while towed by such vehicles.

N. "**Van**" means a four–wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

O. "**Your covered auto**" means:

1. Any vehicle shown on the Declarations.

2. Any **newly acquired vehicle**.

3. Any **trailer you** own.

## PART A – LIABILITY COVERAGE

### DEFINITIONS

"**Covered person**" as used in this Part means:

1. **You** or any **family member** for the ownership, maintenance or use of any auto or trailer.

2. Any person using **your covered auto**.

3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom

coverage is afforded in 1. or 2. above. With respect to an auto or trailer other than **your covered auto**, this provision only applies if the other person or organization does not own or hire the auto or trailer.

The following are not **covered persons** under Part A:

1. The United States of America or any of its agencies.

5100FL(02) Rev. 10–12

901119caf66997b

3495-02-93-0000 BR125612-0003
USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

2. Any person with respect to BI or PD resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the BI or PD.

## INSURING AGREEMENT

We will pay compensatory damages for BI or PD for which any covered person becomes legally liable because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for these coverages has been paid or tendered. We have no duty to defend any suit or settle any claim for BI or PD not covered under this policy.

## LIMIT OF LIABILITY

For BI sustained by any one person in any one auto accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for BI Liability.

Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for BI Liability is our maximum limit of liability for all damages for BI resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for PD Liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, our limit of liability will be the minimum required by the state's financial responsibility law.

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of a covered person:

1. Premiums on appeal bonds and bonds to release attachments in any suit we defend. But we will not pay the premium for bonds with a face value over our limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the covered person on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit we defend, on that part of a judgment that does not exceed our limit of liability. Our duty to pay interest ends when we offer to pay that part of the judgment that does not exceed our limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

5. The amount a covered person must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or van which occurs while the vehicle is in the care, custody, or control of a covered person. The most we will pay is an amount equal to one month of the basic salary of the covered person at the time of a loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at our request.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00          Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

7. All defense costs we incur.

EXCLUSIONS

A. We do not provide Liability Coverage for any covered person:

1. Who intentionally acts or directs to cause BI or PD, or who acts or directs to cause with reasonable expectation of causing BI or PD.

2. For PD to property owned or being transported by a covered person.

3. For PD to property rented to, used by, or in the care of any covered person. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For BI to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

    a. A share-the-expense car pool; or

    b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the auto business. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of your covered auto by you, any family member, or any partner, agent, or employee of you or any family member.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the auto business, farming, or ranching. This exclusion (A.7.) does not apply:

    a. To the maintenance or use of a private passenger auto; a pickup or van owned by you or any family member; or a trailer used with these vehicles; or

    b. To the maintenance or use of a pickup or van not owned by you or any family member if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For BI or PD for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For BI or PD occurring while your covered auto is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For BI sustained as a result of exposure to fungi, wet or dry rot, or bacteria.

13. For BI to a relative who resides primarily in that covered person's household.

B. We do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not your covered auto unless that vehicle is:

    a. A four- or six-wheel land motor vehicle designed for use on public roads;

    b. A moving van for personal use;

    c. A miscellaneous vehicle; or

    d. A vehicle used in the business of farming or ranching.

)901119caf66997b                    3495-02-b1-0008                 USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

2. Any vehicle, other than **your** covered auto:

   a. That has fewer than four wheels; or

   b. That is designed mainly for use off public roads.

   This exclusion (B.2.) does not apply while the vehicle is being used in a medical emergency.

3. Any vehicle, other than **your** covered auto, that is owned by **you**, or furnished or available for **your** regular use. This exclusion (B.3.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle, other than **your** covered auto, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (B.4.) does not apply:

   a. To **your** maintenance or use of such vehicle; or

   b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

5. Any vehicle while being operated in, or in practice for, any **driving contest or challenge**.

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

A. If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. With respect to a vehicle **you** or a **family member** does not own, any insurance **we** provide to a **covered person** shall be excess over:

   1. Any other applicable liability insurance; or

   2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

   However, with respect to a vehicle leased or rented by **you**, if **you** have agreed to provide primary coverage in a written lease or rental agreement, the coverage provided by this policy is primary, but only for the minimum limits required by the Florida Financial Responsibility law and the Florida Motor Vehicle No-Fault Law.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

# PART B-1 – PERSONAL INJURY PROTECTION COVERAGE
### (Referred to as PIP Coverage)

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You or any family member:**

   a. While occupying your covered auto within the United States or Canada;

   b. While occupying any motor vehicle within the State of Florida; or

   c. As a pedestrian, for BI caused by physical contact with a motor vehicle and resulting from an accident occurring within the State of Florida.

2. Any other person while occupying or when struck by your covered auto within the State of Florida. However, this (A.2.) does not apply if the person is:

   a. An owner of a motor vehicle for which security is required under the Florida Motor Vehicle No-Fault Law; or

   b. An insured entitled to receive PIP benefits from the motor vehicle owner's insurer.

B. **"Emergency medical condition"** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

C. **"Entity wholly owned"** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395.

D. **"Family member"** as used in this Part means a relative of any degree by blood, marriage, or by adoption, who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

E. **"Medically necessary."**

1. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

901119caf66997b

 USAA Confidential

(PART B-1 Cont'd.)

2. **"Medically necessary"** does not include the following:

   a. Spinal ultrasound, also known as sonography, ultrasonography, and echography;

   b. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining bodily injury covered by personal injury protection benefits; and

   c. Dermatomal Evoked Potential.

F. **"Medical benefits"** means **reasonable fees for medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to F.1. below within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

   1. Initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III or chapter 401 which provides emergency transportation and treatment.

   2. Upon referral by a provided described in F.1., follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to F.1. which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician,

osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by any of the following persons or entities:

   a. A hospital or ambulatory surgical center licensed under chapter 395.

   b. An **entity wholly owned** by one or more physicians licensed under chapter 458 or 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

   c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

   d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in F.2.

   e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

      (1) Has a medical director licensed under chapter 485, chapter 459, or chapter 460;

      (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

(PART B-1 Cont'd.)

(3) Provides at least four of the following medical specialties:

(a) General medicine;

(b) Radiography;

(c) Orthopedic medicine;

(d) Physical medicine;

(e) Physical therapy;

(f) Physical rehabilitation;

(g) Prescribing or dispensing outpatient prescription medication;

(h) Laboratory services.

3. Reimbursement for services and care provided in F.1. or F.2. up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person had an **emergency medical condition**.

4. Reimbursement for services and care provided in F.1. or F.2. is limited to $2,500 if any provider listed in F.1. or F.2. determines that the injured person did not have an **emergency medical condition**.

5. **Medical benefits** do not include massage as defined in s. 480.033 or acupuncture as defined in s. 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

G. "Motor vehicle."

1. "**Motor vehicle**" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any **trailer** or semi-trailer designed for use with such vehicle.

2. "**Motor vehicle**" does not include a mobile home or any vehicle, other than a **motor vehicle** used in public school transportation;

a. Which is used as mass transit and designed to transport more than five passengers exclusive of the operator of the vehicle; and

b. Owned by a municipality, a transit authority, or a political subdivision of the state.

H. "**Owner**" means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

1. A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement; and

2. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

3. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

I. "**Pedestrian**" means a person while not **occupying** any self-propelled vehicle.

J. "**Reasonable accessible**" means any location within the municipality where the **covered person** is receiving treatment, or in which the **covered person** resides, or within 10 miles by road of a **covered person's** residence, provided such location is within the county in which the **covered person** resides.

If there is no qualified physician to conduct the examination in a location **reasonably accessible** to the covered person, then such examination shall be conducted in an area of the closest proximity to the insured's residence.

5100FL(02) Rev. 10-12

J901119caf66997b

3495492-b1-8000ffG90PFF1 77979B
USAA Confidential

2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM

(PART B-1 Cont'd.)

K. "Reasonable fee" is no more than 80 percent of the following schedule of maximum charges:

1. Two hundred (200) percent of Medicare for emergency transport and treatment by providers licensed under chapter 401.

2. Seventy-five (75) percent of the hospital's usual and customary charges for emergency services and care provided by a hospital licensed under chapter 395.

3. The usual and customary charges in the community for emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist.

4. Two hundred (200) percent of Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services for hospital inpatient services, other than emergency services and care.

5. Two hundred (200) percent of Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services for hospital outpatient services, other than emergency services and care.

6. For all other medical services, supplies and care, two hundred (200) percent of the allowable amount under:

   a. Medicare Part B, except as provided in 6.b and 6.c. below;

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories;

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment; or

   d. If such services, supplies or care are not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. °°

For purposes of this definition (K.), the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services are rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the applicable schedule of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

L. "Replacement services expenses" means, with respect to the period of disability of the covered person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the covered person would have performed without income for the benefit of the covered person's household.

M. "Work loss" means, with respect to the period of disability of the covered person, 60 percent of gross income and earning capacity from inability to work proximately caused by the BI sustained by the covered person. However, "work loss" does not include any loss after death of a covered person.

N. "Your covered auto" as used in this Part does not include any miscellaneous vehicle or motorcycle for which security is not required under the Florida Motor Vehicle No-Fault Law.

901119caf66997b                        USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART B-1 Cont'd.)

## INSURING AGREEMENT

A. We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the covered person:

1. Medical benefits; and

2. Work loss; and

3. Replacement services expenses; and

4. Death benefits of $5,000. Death benefits are in addition to the medical benefits, work loss and replacement services expenses provided under the insurance policy.

These must be incurred as a result of BI (1) caused by an accident arising out of the ownership, maintenance, or use of a motor vehicle and (2) sustained by a covered person.

B. We will not be liable for subsequent PIP benefits if a covered person unreasonably refuses to submit to an examination as required in Part E – General Provisions, Duties After an Accident or Loss.

C. Whenever a person making a claim is charged with committing a felony, we shall withhold PIP benefits until 30 days after we receive notice that the prosecution, at the trial level, makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed, or the person is acquitted.

D. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be reasonable fees and reasonable expenses, but such additional charges are not covered.

E. If the service provider sues the covered person because we refuse to pay expenses that we determine are unreasonable or unnecessary, we will settle or defend the suit, as we consider appropriate. We will pay defense costs and any resulting settlement or judgment against the covered person for reasonable and necessary expenses, subject to the limit of liability for this coverage. The covered person must cooperate with us in the defense of any claim or lawsuit. We will also pay a covered person up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

F. We may utilize Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies or care if the coding policy or payment methodology does not constitute a utilization limit.

## LIMIT OF LIABILITY

A. Regardless of the number of covered persons, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident, the total aggregate limit of PIP benefits available under Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains BI as the result of one accident shall not exceed the amount indicated on the Declarations.

B. Any amount payable under PIP Coverage shall be reduced by the amount of benefits a covered person has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any state or the Federal Government.

901119caf66997b


USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART B-1 Cont'd.)

C. We will reserve $5,000 of PIP benefits for payment to physicians licensed under chapter 458 or chapter 459 or dentists licensed under chapter 466 who provide emergency services and care, as defined in s. 395.002, or who provide hospital inpatient care. The amount held in reserve will be used only to pay claims from such physicians or dentists until 30 days after the date we receive notice of the accident. After the 30-day period, any amount of the reserve for which we have not received notice of such claims may be used to pay other PIP benefits for loss or expense incurred because of the accident.

## APPLICATION OF DEDUCTIBLE

The amount of any deductible stated on the Declarations, incurred by or on behalf of each person to whom the deductible applies and who sustains BI as a result of any one accident, shall be deducted from 100% of the medical benefits, work loss, and replacement services expenses described in F.S. s. 627.736(1) before the application of any percentage limitation that may result because of the lack of Medical Payments benefits coverage. Such deductible shall not apply to:

1. The death benefit; or

2. Any person determined eligible pursuant to the Florida Crime Compensation Act, excluding s. 960.28 of the act.

## EXCLUSIONS

A. We do not provide PIP Coverage for BI sustained by any covered person:

1. While occupying a motor vehicle you own that is not your covered auto under this Part;

2. While occupying, or when struck by, any vehicle, other than your covered auto, that is owned by or furnished or available for the regular use of, any family member. This exclusion (A.2.)

does not apply to you.

3. While operating your covered auto without expressed or implied consent;

4. If that covered person intentionally caused the BI;

5. While committing a felony;

6. For work loss if an entry on the Declarations indicates such coverage does not apply; or

7. While occupying a motor vehicle located for use as a residence or premises.

B. We will not pay benefits under PIP Coverage for services, supplies or care that is not reimbursable under Medicare or Florida workers' compensation law.

C. We will not pay benefits under PIP Coverage for any person:

1. Entitled to PIP benefits from:

   a. The owner of a motor vehicle other than you; or

   b. That owner's insurer.

2. Who owns an uninsured motor vehicle subject to the Florida Motor Vehicle No-Fault Law, as amended.

## OTHER INSURANCE

A. If there is other applicable PIP Coverage, we will pay only our share of the loss and of expenses incurred in processing the claim. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

B. If a covered person is injured while occupying, or when struck by, a motor vehicle rented or leased under a rental or lease agreement, PIP Coverage under the lessor's policy will be primary unless a statement in bold type on the face of the rental or lease agreement, specifies that PIP Coverage afforded under the lessor's policy shall be excess.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

## PART B-2 - MEDICAL PAYMENTS COVERAGE

### DEFINITIONS

A. "Covered person" as used in this Part means:

1. You or any **family member** while occupying any auto.

2. Any other person while occupying **your covered auto.**

3. You or any **family member** while not occupying a motor vehicle if injured by:

   a. A motor vehicle designed for use mainly on public roads;

   b. A **miscellaneous vehicle**; or

   c. A trailer.

B. "Medical payment fee" is an amount, as determined by us or someone on our behalf, that we will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services.** The amount that we will pay will be one of the following:

1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3. The amount negotiated with the provider; or

4. The lesser of the following:

   a. The actual amount billed; or

   b. A reasonable fee for the service provided.

C. "Medically necessary and appropriate medical services" are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are required to identify or treat BI caused by an auto accident and sustained by a covered person and that are:

1. Consistent with the symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;

2. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;

3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4. Not primarily for the convenience of the covered person, his or her physician, hospital, or other health care provider;

5. The most appropriate supply or level of service that can be safely provided to the covered person; and

6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, "medically necessary and appropriate medical services" do not include the following:

1. Nutritional supplements or over-the-counter drugs;

5100FL(02) Rev. 10-12

USAA Confidential

0901119caf66997b

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART B-2 Cont'd.)

2. Experimental services or supplies, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed;

3. Inpatient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient;

4. Spinal ultrasound, also known as sonography, ultrasonography and echography;

5. Surface EMG;

6. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining BI covered by Medical Payments Coverage; and

7. Dermatomal Evoked Potential.

INSURING AGREEMENT

A. We will pay only the medical payment fee for medically necessary and appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:

1. Result from BI sustained by a covered person in an auto accident; and

2. Be incurred for services rendered within three years from the date of the auto accident.

B. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are medical payment fees for medically necessary and appropriate medical services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be medical payment fees and reasonable expenses, but such additional charges are not covered.

For purposes of this Part, we shall not be considered to have been furnished with notice of the amount of a covered loss or medical bills due unless the statements or bills are properly completed in their entirety, with all relevant information being provided.

1. All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to us on a properly completed:

a. Centers for Medicare and Medicaid Services (CMS) 1500 form; or

b. UB 92 form.

2. For purposes of this Part, "properly completed" means that the billing shall, to the extent applicable, use the following in effect for the year in which services are rendered:

a. The Physicians' Current Procedural Terminology (CPT);

b. Healthcare Correct Procedural Coding System (HCPCS); and

c. ICD-9.

3. In addition to the references shown in B.2.a. through B.2.c. above, we, or someone on our behalf, may seek guidance from one or more of the following to determine whether a form is "properly completed":

a. The Office of the Inspector General (OIG);

b. Physicians Compliance Guidelines; and

c. Other authoritative treatises designated by rule by the Agency for Health Care Administration.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART B-2 Cont'd.)

4. All providers, other than hospitals, shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

5. No statement of medical services may include charges for medical services performed by a person or entity unless that person or entity possesses the valid licenses required to perform such services.

C. If the service provider sues the covered person because we refuse to pay expenses that we determine are unreasonable or unnecessary, we will settle or defend the suit, as we consider appropriate. We will pay defense costs and any resulting settlement or judgment against the covered person for reasonable and necessary expenses, subject to the limit of liability for this coverage. The covered person must cooperate with us in the defense of any claim or lawsuit. We will also pay a covered person up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

D. We will not be liable for pending or subsequent benefits if a covered person or assignee of benefits under Medical Payments Coverage refuses to submit to an examination as required in Part E – General Provisions, Duties After an Accident or Loss.

## LIMIT OF LIABILITY

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each covered person injured in any one accident. This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

## EXCLUSIONS

We do not provide benefits under this Part for any covered person for BI:

1. Sustained while occupying any vehicle that is not your covered auto unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A miscellaneous vehicle; or

   d. A vehicle used in the business of farming or ranching.

2. Sustained while occupying your covered auto when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while occupying any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by you.

6. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by any family member. This exclusion (6.) does not apply to you.

7. Sustained while occupying a vehicle without expressed or implied permission.

5100FL(02) Rev. 10-12

Page 16 of 34

USAA Confidential

901119caf66997b

(PART B-2 Cont'd.)

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to **BI** sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge**.

12. Sustained as a result of a **covered person's** exposure to **fungi**, wet or dry rot, or bacteria.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## SPECIAL PROVISIONS

A. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E – General Provisions, then coverage under Part B-2 – Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

B. Payment under Part B-2 – Medical Payments Coverage shall be applied to that portion of any claim for PIP medical expenses that is otherwise covered but not payable under PIP Coverage due to the limitation of 80% of medical expenses, regardless of whether the full amount of PIP benefits have been exhausted. However, Medical Payments Coverage shall not be payable for the amount of any deductible which has been selected under PIP Coverage.

## PART C - UNINSURED MOTORISTS COVERAGE
### (referred to as UM Coverage)

UM Coverage includes underinsured motorists coverage.

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies.

B. **"Uninsured Motor Vehicle."**

1. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

a. To which no liability bond or policy applies at the time of the accident.

b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00     Received in Polk 05/26/2022 04:01 PM

(PART C Cont'd.)

c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in BI without hitting:

(1) You or any **family member**;

(2) A vehicle **you** or any **family member** is occupying; or

(3) **Your covered auto.**

d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent within 4 years after the accident.

2. "**Uninsured motor vehicle**" does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of **you** or any **family member.** This exclusion (2.a.) does not apply:

(1) If the vehicle or equipment is **your covered auto** to which Part A of this policy applies; and

(2) Liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member.**

b. Operated on rails or crawler treads, except for a snowmobile.

c. Designed mainly for use off public roads while not on public roads.

d. While located for use as a residence or premises.

INSURING AGREEMENT

A. We will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI

sustained by a **covered person** and caused by an auto accident. However, we will not pay damages for pain, suffering, mental anguish, or inconvenience unless the BI consists in whole or in part of:

1. Significant and permanent loss of an important bodily function;

2. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

3. Significant and permanent scarring or disfigurement; or

4. Death.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle.** Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us.**

LIMIT OF LIABILITY (STACKED)

A. Accidents involving BI to **you** or any **family member.**

1. For BI sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage. Subject to this limit for "each person," **our** maximum limit of liability for all damages for BI resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

)901119caf66997b


3495-02-01-000 USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART C Cont'd.)

2. Notwithstanding the maximum limits of liability for "each person" and "each accident" set forth in A.1. above, for BI sustained in any one accident by a **covered person** other than **you** or any **family member**, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the lesser of:

   a. The "each person" limit of liability for UM Coverage shown on the Declarations applicable to the vehicle that person was occupying at the time of the accident; or

   b. That **covered person's** pro-rata share of the "each accident" limit of liability for UM Coverage shown on the Declarations applicable to that vehicle.

   **You** or any **family member** who sustains BI in the accident will also be entitled to a pro-rata share of the "each accident" limit of liability applicable to that vehicle. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all **covered persons**.

3. These limits are the most we will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made; or

   c. Vehicles involved in the accident.

B. Accidents not involving BI to **you** or any **family member**.

1. For BI sustained by any one person in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

Subject to this limit for "each person", our maximum limit for all damages for BI resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage.

2. These limits are the most we will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made;

   c. Vehicles or premiums shown on the Declarations;

   d. Premiums paid; or

   e. Vehicles involved in the accident.

C. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid or payable because of the BI:

1. Under any workers' compensation law, disability benefits law, or similar law; or

2. Under any PIP Coverage, automobile medical expense coverage, or motor vehicle liability insurance.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid because of the BI by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

**EXCLUSIONS**

A. We do not provide UM Coverage for BI sustained by any **covered person**:

1. If that person or legal representative settles the BI claim without our written consent. However, this exclusion (A.1.) does not apply:

   a. If such settlement does not prejudice our right to recover payment; or

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      **Received in Polk 05/26/2022 04:01 PM**

(PART C Cont'd.)

b. If that person or legal representative provides us with advance notice of any proposed settlement as required by Part E - General Provisions, Duties After an Accident or Loss.

2. While occupying your covered auto when it is being used to carry persons for a fee. This exclusion (A.2.) does not apply to:

a. A share-the-expense car pool; or

b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Using a vehicle without expressed or implied permission.

4. While your covered auto is rented or leased to others, or shared as part of a personal vehicle sharing program.

5. While occupying any vehicle when it is being operated in, or in practice for, any driving contest or challenge.

B. UM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation law or similar disability benefits law.

C. We do not provide UM Coverage for punitive or exemplary damages.

OTHER INSURANCE

If there is other applicable UM Coverage available under one or more policies or provisions of coverage:

1. Any insurance we provide with respect to a vehicle you do not own or to a person other than you or any family member will be excess over any collectible insurance.

2. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

NON-DUPLICATION

No covered person will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

1. Paid because of the BI by or on behalf of persons or organizations who may be legally responsible.

2. Paid or payable under any workers' compensation law or similar disability benefits law.

3. Paid under another provision or coverage in this policy.

4. Paid under any PIP Coverage or under any automobile medical expense coverage.

5100FL(02) Rev. 10-12

901119caf66997b

3895-02-b1-0000 USAA Confidential

## PART D – PHYSICAL DAMAGE COVERAGE

### DEFINITIONS

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered **collision**: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, **you** may elect to have it considered a **loss** caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

1. Original manufacturer equipment, furnishings, or parts;

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

3. Equipment, furnishings, or parts designed to assist disabled persons;

4. Anti-theft devices and devices intended to monitor or record driving activity; and

5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or trailer not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

2. A nonowned vehicle does not include any of the following vehicles used in any business or occupation other than farming or ranching:

   a. A pickup;

   b. A van; or

   c. A **miscellaneous vehicle**.

F. **"Repair."**

1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function, and appearance. This may include the replacement of component parts.

2. **Repair** does not require:

   a. A return to the pre-**loss** market value of the property;

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

    b.  Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

    c.  Rekeying of locks following theft or misplacement of keys.

G.  "Your covered auto," as used in this Part, includes:

    1.  Custom equipment, up to a maximum of $5,000, in or on your covered auto.

    2.  A nonowned vehicle. If there is a loss to a nonowned vehicle, we will provide the broadest coverage shown on the Declarations.

## INSURING AGREEMENT

A.  Comprehensive Coverage (excluding collision).

    1.  Physical damage. We will pay for loss caused by other than collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown on the Declarations. However, we will pay for the cost of repairing or replacing the damaged windshield on your covered auto without a deductible.

    2.  Transportation expenses. We will also pay:

        a.  Up to $30 a day, to a maximum of $900, for transportation expenses incurred by you or any family member. This applies only in the event of a total theft of your covered auto. We will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when your covered auto is returned to use or, if not recovered or not repairable, up to seven days after we have made a settlement offer.

        b.  If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement for that vehicle.

B.  Collision Coverage. We will pay for loss caused by collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown on the Declarations.

C.  Rental Reimbursement Coverage (for loss other than total theft).

    1.  We will reimburse you for expenses you or any family member incurs to rent a substitute for your covered auto. This coverage applies only if:

        a.  Your covered auto is withdrawn from use for more than 24 hours due to a loss, other than a total theft, to that auto; and

        b.  The loss is covered under Comprehensive Coverage or caused by collision, and the cause of loss is not otherwise excluded under Part D of this policy.

    2.  We will reimburse you only for that period of time reasonably required to repair or replace your covered auto. If we determine your covered auto is a total loss, the rental period will end no later than seven days after we have made a settlement offer.

D.  USAA Roadside Assistance. We will pay the reasonable costs you or any family member incurs for one of the following each time your covered auto is disabled:

    1.  Mechanical labor up to one hour at the place of breakdown.

    2.  Locksmith services to gain entry to your covered auto. This does not include the rekeying of locks following theft or misplacement of keys.

0901119caf66997b

3493-024-1-0008  USAA Confidential

2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, we do not pay for the cost of these items.

## LIMIT OF LIABILITY

A. Total loss to **your** covered auto. Our limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

1. The maximum amount **we** will include for loss to **custom equipment** in or on **your** covered auto is $5,000.

2. **We** will declare **your** covered auto to be a total loss if, in **our** judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss.

B. Other than a total loss to **your** covered auto:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to repair the loss based on **our** estimate or an estimate that **we** approve, if submitted by **you** or a third party. Upon request, **we** will identify at least one facility that is willing and able to complete the repair for the amount of the estimate.

2. **Our** estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts which are at least equivalent in kind and quality to the damaged parts prior to the loss in terms of fit, appearance, and performance.

3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. **You** will be responsible, however, for any cost difference between the parts included in **our** estimate and the new OEM parts used in the **repair**.

4. **We** will not take a deduction for depreciation. **We** will take a deduction if prior damage has not been **repaired**. Prior damage does not include wear and tear.

C. Personal property contained in **your** covered auto. The limits of liability described below are separate from the limits available for a loss to **your** covered auto:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

a. The amount necessary to replace the damaged or stolen property; or

b. $250.

2. **We** will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, **our** maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, **our** limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

**We** may pay for loss in money, or repair or replace the damaged or stolen property. **We** may, at **our** expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it. **We** cannot be required to assume the ownership of damaged property. **We** may settle a claim either with **you** or with the owner of the property.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

## LOSS PAYABLE CLAUSE

Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the loss results from **your** conversion, secretion, or embezzlement of **your covered auto**. We may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown on the Declarations. We may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that we not send notices, including a notice of cancellation, we will abide by that request. When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

We will not apply the deductible to loss caused by **collision** with another vehicle if all of these conditions are met:

1. The loss to **your covered auto** is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of **your covered auto** is not legally responsible, in any way, for causing or contributing to the **loss**.

## EXCLUSIONS

We will not pay for:

1. **Loss** to **your covered auto** which occurs while it is being used to carry persons for a fee. This exclusion (1.) does not apply to:

a. A share-the-expense car pool; or

b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

a. Road damage to tires;

b. Wear and tear;

c. Freezing; or

d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. We will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/ transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3. **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. **Loss** to a camper body or trailer owned by **you** or any **family member** which is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family member** becomes the owner.

5. **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

5100FL(02) Rev. 10-12

901119caf66997b

3495-02-b1-0000007132324001  USAA Confidential

**2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM**

(PART D Cont'd.)

6. **Loss** to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. **Loss** to any **nonowned vehicle** arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8. **Loss** to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. **Loss** to any vehicle while it is being operated in, or in practice for, any **driving contest or challenge.**

10. **Loss** resulting from:

   a.  The acquisition of a stolen vehicle;

   b.  Any legal or governmental action to return a vehicle to its legal owner; or

   c.  Any confiscation or seizure of a vehicle by governmental authorities.

   This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. **Loss** resulting from use in any illicit or prohibited trade or transportation.

12. Any **loss** arising out of any act committed:

   a.  By or at the direction of **you** or any **family member**; and

   b.  With the intent to cause a **loss.**

13. **Loss** caused by **fungi**, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of **fungi**, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

5100FL(02) Rev. 10-12

## MANDATORY PRE-INSURANCE INSPECTION

A.  **We** have the right to inspect any private passenger motor vehicle which **you** insure or intend to insure for Physical Damage Coverage under this policy. This right applies only in accordance with Florida Statute 627.744.

B.  When **we** require an inspection, **you** must cooperate and make the vehicle available for the inspection.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1.  Any coverage provided by the owner of the **nonowned vehicle.**

2.  Any other applicable physical damage insurance.

3.  Any other source of recovery applicable to the **loss.**

This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss.** If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

Page 25 of 34

901119caf66997b

USAA Confidential

## PART E - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the covered person, as defined in this policy, shall not relieve us of any obligations under this policy.

### CHANGES

A. The premium is based on information we have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or is incorrect or incomplete, we may adjust **your** premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, **we** will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. **You** agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

   1. Change in location where any vehicle is garaged.

   2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

   3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

   4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

   5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

   6. Addition or deletion of an operator.

   7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

   1. If, because of **your** active-duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your covered auto** and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

J901119caf66997b


3495-02-41-0008 USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date you returned from deployment. If you wish to continue the reinstated coverage beyond the 60-day period, you must request it during the 60-day period. If you request reinstated coverage after this 60-day period, any coverage we agree to provide will be effective at the date and time of your request unless we agree to an earlier date.

3. You must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if you return from deployment on furlough or emergency leave for a period of 30 days or less, we will waive any increase in the premium for the period of time you are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs we will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and you must pay an additional premium for that coverage.

## CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

## DUTIES AFTER AN ACCIDENT OR LOSS

We will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A – Liability must:

1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with a suit, accident, or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize us to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person or entity seeking coverage under Part B – 1 – PIP Coverage or Part B – 2 – Medical Payments Coverage.

1. As soon as practicable, give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

2. Submit as often as we reasonably require, to examination under oath. The examination must be signed.

3. Submit to mental examinations by physicians we select at our expense when and as often as we may reasonably require. Mental exams or physical exams as required by us in B.3.a. above will be scheduled in a location reasonably accessible to such person, and a copy of the medical report shall be forwarded to such person if requested. Reasonably accessible means any location:

   a. Within the municipality where such person is receiving treatment or in which that person resides; or

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

(PART E Cont'd.)

b. Within 10 miles by road of such person's residence, provided such location is within the county in which that person resides.

If there is no qualified physician to conduct the examination in a location reasonably accessible to such person, then the examination shall be conducted in an area of the closest proximity to that person's residence.

D. A person seeking coverage under Part C – UM Coverage must also comply with the following:

1. If the **covered person** and the owner or operator of the **uninsured motor vehicle** reach a settlement agreement that would exhaust the owner's or operator's limits of liability, the **covered person** must submit the agreement to **us** in writing for our approval prior to final execution of the settlement agreement. This applies only if:

   a. The settlement would not fully satisfy the **covered person's** claim for BI; and

   b. A claim for UM Coverage has been or will be made against **us**.

2. The **covered person** may file suit against **us** and the owner or operator of the **uninsured motor vehicle** if, within 30 days after **our** receipt of the settlement agreement, **we** do not:

   a. Approve the settlement;

   b. Waive **our** rights of recovery against the owner or operator of the **uninsured motor vehicle**;

   c. Authorize the signing of a full release; and

   d. Agree to arbitrate the claim for UM Coverage.

The suit shall decide if the **covered person** is legally entitled to collect damages and, if so, the amount.

E. A person seeking coverage under Part D – Physical Damage Coverage must also:

1. Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** is stolen.

3. Permit **us** to inspect and appraise the damaged property before its repair or disposal.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy.

1. In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

2. In addition, under Part B-1 – PIP Coverage and Part B-2 – Medical Payments Coverage, if **we** fail to deny or pay a claim within 30 days of receiving adequate proof of that claim, the **covered person** shall not file suit for those benefits until providing **us** with a written demand for payment and giving **us** 30 days in which to respond to that demand. Any written demand for payment must include an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefits claimed to be due.

B. No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

901119caf66997b


USAA Confidential

2022CA-001788-0000-00     Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

C. Unless we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction in the county and state where the covered person lived at the time of the accident.

## MEDIATION

We or the covered person may request mediation of any claim for BI in an amount of $10,000 or less or a claim for PD in any amount arising out of the ownership, operation, use, or maintenance of a motor vehicle prior to the institution of litigation.

Such request shall be filed with the Florida Department of Financial Services on a form approved by the department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation.

The filing of a request for mediation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the mediation process or the time prescribed in the Limitation of Actions, whichever is later.

## MISREPRESENTATION

We do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, we will pay for each element of loss only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejudice them. However, our rights in this paragraph do not apply:

1. Under Part C – UM Coverage, with respect to payments made because of the BI resulting from an accident with an uninsured motor vehicle, as defined in Definition 1.b. of that Part, if we:

   a. Have been given prompt written notice of a tentative settlement between a covered person, as defined in Part C, and the insurer of an uninsured motor vehicle; and

   b. Fail to advance payment to such person in an amount equal to the tentative settlement within 30 days after receipt of notification.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

If we advance payment to the covered person in an amount equal to the tentative settlement within 30 days after receipt of notification, that payment will be separate from any amount the covered person is entitled to recover under the provisions of Part C – UM Coverage. However, we shall have a right to recover such advance payment.

2. Under Part D, against any person using your covered auto with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payment.

C. If the covered person, as defined in this policy, recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

D. If we make payment for a claim under Part A, and the covered person, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2. Failed or refused to comply with the duties specified in this policy and prejudiced our defense of the liability claim by such failure or refusal;

then, the covered person shall reimburse us to the extent of our payment and cost of defense.

E. If we make payment for a claim under Part D and you or any family member has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then you shall reimburse us to the extent of our payment.

OWNERSHIP

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of your covered auto between any ports of these locations.

However, PIP benefits under Part B-1 – PIP Coverage apply only to accidents occurring within the State of Florida with respect to any covered person, as defined in Part B-1 – PIP Coverage, other than you or any family member.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy, except PIP Coverage, are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if you have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for BI or PD is brought in the USA.

5100FL(02) Rev. 10-12

Page 30 of 34

3495-02-J-1-0009  USAA Confidential

)901119caf66997b

(PART E Cont'd.)

3. Coverage under this policy does not extend:

   a. To any **covered person**, as defined in this policy, who does not live in the USA.

   b. To any **covered person**, as defined in this policy, occupying a vehicle which is not principally garaged and used in the USA.

   c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance **we** provide will be excess over any other similar valid and collectible insurance.

## REDUCING THE RISK OF LOSS AND OTHER BENEFITS

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items. We may also occasionally provide **you** with items, offers or services **we** think may benefit **you** or **your family members**. Such items, offers and services may be provided in any form we choose.

## SPOUSE ACCESS

A. The named insured and we agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

   1. **You** may not cancel a new or renewal policy providing PIP Coverage or Property Damage Liability Coverage during the first 60 days this policy is in effect unless:

      a. **Your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

      b. Ownership of **your covered auto** is transferred; or

      c. Another policy is purchased to replace the policy being cancelled; or

      d. **You** are a member of the United States Armed Forces and are called to or on active duty outside the United States in an emergency situation.

   2. **You** may cancel this policy for any reason after this policy is in effect for 60 days, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

   3. **We** may cancel this policy by mailing a notice to the named insured shown on the Declarations at the most recent address **you** provided to **us** by giving:

      a. At least ten days notice if cancellation is for nonpayment of premium; or

      b. At least 45 days notice in all other cases.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00     Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

4. If this is a new policy providing PIP Coverage and Property Damage Liability Coverage, we will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

5. After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   a. For nonpayment of premium; or

   b. For material misrepresentation or fraud; or

   c. If your driver's license, or that of any driver who lives with you or customarily uses your covered auto, has been suspended or revoked. This must have occurred:

      (1) During the policy period or during the 180 days immediately preceding its effective date; or

      (2) If the policy is a renewal, during its policy period.

6. If this policy is issued to meet the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security, the following special provisions apply and supersede any contrary provisions in the policy:

   a. You may not cancel this policy for any reason.

   b. Effective when our underwriting is completed or 30 days from the effective date of the policy, whichever comes first:

      (1) We may not cancel this policy for any reason.

      (2) No refund of premium will be allowed.

   (3) This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk vehicle, adding vehicles, adding new drivers or moving to a different rating territory.

   (4) If there is a material change in the policy, you must obtain a new six-month non-cancellable policy. If you obtain the policy from us, we will give you a credit on the new policy for any unearned premium paid on the previously issued policy.

7. We may cancel for any other reason not prohibited by law.

B. Nonrenewal. If we decide not to renew this policy, we will mail notice by registered or certified mail or United States Post Office certificate of mailing to the named insured shown on the Declarations at the most recent address you provided to us. Notice will be mailed at least 45 days before the end of the policy period.

C. Automatic Termination.

1. If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that you have not accepted our offer.

2. If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Mailing of any notice by registered or certified mail or United States Post Office proof of mailing of any notice will be sufficient proof of notice.

901119caf66997b



USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if the named insured shown on the Declarations dies, we will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy we issued to you apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM Coverage.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

THIS PAGE INTENTIONALLY LEFT BLANK

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

# EXHIBIT "B"

2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:      **615900**

Filing Accepted:    **3/14/2022**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **POPE CHERRY** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FL  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **POPE LENWOOD** |
| Policy #: | █████████ |
| Claim #: | █████████ |

### Attorney

| | |
|---|---|
| Name: | **JOHN DISTASIO** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FLORIDA  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **USAA GENERAL INDEMNITY COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**STEVEN COBB**

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 10/14/2008

**2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM**



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:  **615900**

## Reason for Notice

Reasons for Notice:

   **Unsatisfactory Settlement Offer**

---

**PURSUANT TO SECTION 624.155, F.S.**  please indicate all statutory provisions alleged to have been violated.

   **624.155(1)(b)(1)**   **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

---

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**"We will pay compensatory damages which a covered person in legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI sustained by a covered person and caused by an auto accident."**

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**On July 21, 2018, Cherry Pope was a seat belted passenger in an automobile that was struck from behind on South Florida Avenue in Polk County, Florida. The at-fault driver admitted to striking Ms. Pope's vehicle from behind, according to Officery Suttle's crash report, # 87796806. Ms. Pope sustained injuries, permanent in nature, to her C-Spine and Lumbar Spine. Most notably, Ms. Pope's Lumber spine contained injuries of L4 on L5. Developing bilateral rusterolateral disc herniation with annular tear AND L5-S I level: Slight postcrolisthcsis of 1.5 on SI. Disc herniation. These injuries were different in kind than any previous injury to this area of her body. She also experienced emotional distress, anxiety, pain and suffering. Ms. Pope sustained over $43,000 in medical treatment. She has been out of work since July 2021 on disability. All requisite paperwork has been provided to USAA. USAA claim adjuster Steven Cobb was presented with a demand to settle the UM claim for $61,000 based on her medical bills alone, on or about the week of March 7, 2022. Mr. Cobb counteroffered at $35,000, via phone, shortly thereafter. Plaintiff's counsel subsequently discovered that Ms. Pope was out of work on disability due to the car crash and increased Ms. Pope's offer to $100,000 in light of the new evidence. Mr. Cobb requested the paperwork to reflect the wage loss claim. On March 11, 2022, Plaintiff's counsel sent Ms. Pope's Cigna check and Dr. Dawson's records, indicating that Ms. Pope would be unable to return to work. The paperwork reflected Ms. Pope's loss of income and Dr. Dawson's medical notes, which explain the injuries as a cause of Ms. Pope's inability to work. Please specifically review pages 3, 7, and 13 of Dr. Dawson's evaluation, outlining her lumbar and motor vehicle accident. When the additional paperwork was submitted to Mr. Cobb, Plaintiff's counsel wrote via email, "When you have finished reviewing, please reach out to me to get her UM claim settled at a fair number. I am willing to meet in the middle on this, so let's get this done." In an act of continued retaliation, Mr. Cobb moves his offer down to $20,000. Ms. Pope produced more evidence of wage loss and was unjustly penalized by her own insurance company, USAA. The offer made by USAA, which was significantly less than Ms. Pope's out-of-pocket medical expenses, did not take into consideration her pain and suffering, future medicals, nor wage claim which her medical records and reports show she will need. I am requesting that USAA fairly settle this claim and not unnecessarily punish Ms. Pope for a car accident that wasn't her fault.**

## Comments

DFS-10-363
Rev. 10/14/2008

---

**User Id**          **Date Added**          **Comment**

DFS-10-363
Rev. 10/14/2008

2022CA-001788-0000-00          Received in Polk 05/26/2022 04:01 PM

**USAA GENERAL INDEMNITY COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg - San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

RENEWAL OF

| State | 05 07 | Veh | | POLICY NUMBER |
|---|---|---|---|---|
| FL | 461461 | Terr | | 02577 09 59G 7102 2 |

POLICY PERIOD:    (12:01 A.M. standard time)
**EFFECTIVE JUL 06 2018 TO JAN 06 2019**

**Named Insured and Address**

LENWOOD ARNEZ POPE
1301 VALLEY GROVE DR
SEFFNER FL 33584-4567

OPERATORS
01 LENWOOD ARNEZ POPE
02 CHERRY QUINN POPE
04 LYNQUISHIA Q POPE

EXHIBIT
**B**

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | | P | | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure
VEH 05  SEFFNER FL 33584-4567
VEH 07  SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES        LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY     EA PER $   50,000 | | | | | | | | |
| EA ACC $  100,000 | | 170.78 | | 145.04 | | | | |
| PROPERTY DAMAGE EA ACC $   50,000 | | 106.03 | | 82.39 | | | | |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | |
| MAXIMUM BENEFITS          $10,000 | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | | | | | | | |
| WORK LOSS N/A FOR NAMED INSD | | | | | | | | |
| AND RESIDENT RELATIVES | D 250 | 88.84 | D 250 | 126.14 | | | | |
| PART C - UNINSURED MOTORISTS | | | | | | | | |
| STACKED | | | | | | | | |
| BODILY INJURY     EA PER $   50,000 | | | | | | | | |
| EA ACC $  100,000 | | 248.26 | | 256.35 | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS      ACV LESS | D 500 | 37.87 | D 500 | 70.50 | | | | |
| COLLISION LOSS          ACV LESS | D 500 | 99.61 | D 500 | 185.09 | | | | |
| TOTAL PREMIUM - SEE FOLLOWING PAGE(S) | | | | | | | | |

LOSS PAYEE
VEH 05  PLATINUM AUTO FINANCE, CLEARWATER   FL
VEH 07  TD BANK NA, LEWISTON  ME

ENDORSEMENTS: ADDED 07-06-18 - RSGPFL(01)
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- 5100FL(02)  ACCFOR(01)  A402FL(01)
INFORMATION FORMS: IIRSGPFL(01)  663FL(04)  999FL(03)

J4  1

Y 05  RMM580000          Y 07  RMF580000          Y          Y

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                      on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53384-05-12

0901119caf84d53b

USAA Confidential

**USAA GENERAL INDEMNITY COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg - San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

RENEWAL OF

| State | 05 ,07 | Veh | POLICY NUMBER |
|---|---|---|---|
| FL | 461461 | Terr | 02577 09 59G 7102 2 |

POLICY PERIOD:        (12:01 A.M. standard time)
**EFFECTIVE JUL 06 2018 TO JAN 06 2019**

**Named Insured and Address**

LENWOOD ARNEZ POPE
1301 VALLEY GROVE DR
SEFFNER FL 33584-4567

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | | P | | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 05   SEFFNER FL 33584-4567
VEH 07   SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
| ECONOMY CLASS | | 23.66 | | | | | | |
| STANDARD CLASS | | | | 26.20 | | | | |
| TOWING AND LABOR | | 9.00 | | 9.00 | | | | |
| SELECTED VEHICLE FEATURES (LISTED | | | | | | | | |
| ON THE FEATURES DECLARATION) | | 10.18 | | 20.46 | | | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 794.23 | | 921.17 | | | | |

6 MONTH PREMIUM $ 1715.40
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

EARNED ACCIDENT FORGIVENESS APPLIES WITH FIVE YEARS CLEAN DRIVING WITH USAA.
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
VEH 05 - MEDICAL PAYMENTS
VEH 07 - MEDICAL PAYMENTS

| V H 05 | RMM580000 00 | | V H 07 | RMF580000 00 | | V H | | | V H | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                          on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53384-05-12

0901119can84d53b

USAA Confidential



**For Customer Support refer to the appropriate platform below:**

**OrderPoint**
800-934-9698
Orderpoint.support@lexisnexis.com

**Accurint for Insurance**
866-277-8407
Accurint.support@lexisnexis.com

**Lexis.com**
Law Firm accounts
800-543-6862

PAGE COUNT: 5

---

CLIENT :       USAA
DIVISION :     SER1
ADJUSTER :   DEBORAH CAKOURO
CLAIM :        2577 09 59  009

```
┌─────────────────┐
│    EXHIBIT      │
│       C         │
└─────────────────┘
```

TRANSACTION # :    728814262
DATE :                 07/27/2018

DATE OF LOSS :    07/21/2018      TIME OF LOSS : 0900
STREET :              SOUTH FLORIDA AVE
CITY :                  LAKELAND
COUNTY :            POLK
STATE :               FL

INVESTIGATING AGENCY :     LAKELAND PD
REPORT NUMBER :             18-14610
REPORT TYPE :                 Auto Accident
PARTY 1 :                         CARLOYN  LEE
PARTY 2 :
PARTY 3 :

CAR :                 MAKE :           YEAR :
                        TAG :   UNKNOWN

DRIVER LICENSE :
ADDITIONAL INFO :

---

NOTE :

---

THANK YOU FOR YOUR ORDER!

USAA Confidential

0901119ca002daae

# FLORIDA TRAFFIC CRASH REPORT

**HIGHWAY SAFETY & MOTOR VEHICLES**
TRAFFIC CRASH RECORDS
NEIL KIRKMAN BUILDING, TALLAHASSEE, FL 32399-0537

LONG FORM [X]  SHORT FORM [ ]  UPDATE [ ]

**(Electronic Version)**

| Date of Crash | Time of Crash | Date of Report | Invest. Agency Report Number | HSMV Crash Report Number |
|---|---|---|---|---|
| 21/Jul/2018 08:40 PM | 21/Jul/2018 08:40 PM | 21/Jul/2018 12:00 AM | 18-14610 | 87796806 |

## CRASH IDENTIFIERS

| County Code | City Code | County of Crash | | Place or City of Crash | Within City Limits | Time Reported | Time Dispatched |
|---|---|---|---|---|---|---|---|
| 05 | 52 | POLK | | LAKELAND | Yes | 21/Jul/2018 08:40 PM | 21/Jul/2018 08:42 PM |

| Time on Scene | Time Cleared Scene | Completed | Reason (if Investigation NOT Completed) | Notified By |
|---|---|---|---|---|
| 21/Jul/2018 08:45 PM | 21/Jul/2018 09:29 PM | Yes | | Law Enforcement |

## ROADWAY INFORMATION

| Crash Occured On Street, Road, Highway | At Street Address# | At Lattitude | and Longitude |
|---|---|---|---|
| S FLORIDA AVE | | 27.995104 | -81.956931 |

| At Feet | Or Miles | Direction | From Intersection With Street, Road, Highway | Or From Milepost # |
|---|---|---|---|---|
| 93 | | South | SR 37/S FLORIDA AVE | |

| Road System Identifier | Type Of Shoulder | Type Of Intersection |
|---|---|---|
| 3 State | 3 Curb | 1 Not at Intersection |

## CRASH INFORMATION (Check if Pictures Taken) [ ]

| light Condition | Weather Condition | Roadway Surface Condition | School Bus Related | Manner Of Collision |
|---|---|---|---|---|
| 2 Dusk | 1 Clear | 1 Dry | 1 No | 1 Front to Rear |

| First Harmful Event Type | First Harmful Event | First Harmful Event Location | Within Interchange | First Harmful Event Relation to Junction |
|---|---|---|---|---|
| | 14 | 1 On Roadway | No | 3 Intersection.Related |

| Contributing Circumstances: Road | Contributing Circumstances: Road | Contributing Circumstances: Road |
|---|---|---|
| 1 None | | |

| Contributing Circumstances: Environment | Contributing Circumstances: Environment | Contributing Circumstances: Environment |
|---|---|---|
| | | |

| Work Zone Related | Crash In Work Zone | Type Of Work Zone | Workers In Work Zone | Law Enforcement In Work Zone |
|---|---|---|---|---|
| 1 No | | | | |

## VEHICLE (Check if Commercial) [ ]

| Vehicle | Motor Vehicle Type | Hit and Run | Veh License Number | State | Reg. Expires | Permanent Reg. | VIN |
|---|---|---|---|---|---|---|---|
| 2 | 1 Vehicle in Transport | 1 No | 0376JS | FL | 16/Sep/2018 | | 3FAHP0HA0AR284491 |

| Year | Make | Model | Style | Color | Extent of Damage | Est. Damage | Towed Due To Damage | Vehicle Removed By | Rotation |
|---|---|---|---|---|---|---|---|---|---|
| 2010 | FORD | FUSION | 4D | TAN | None | 0 | No | CAROLYN LEE | Rotation |

| Insurance Company | Insurance Policy Number |
|---|---|
| WINDHAVEN INSURANCE COM | FLIC0017295300 |

| Name of Vehicle Owner (Check Box If Business) [ ] | Current Address (Number and Street) | City and State | Zip Code |
|---|---|---|---|
| CAROLYN DENISE LEE | 137 WESTOVER ST | LAKELAND FL | 33803 |

| Trailer One: | License Number | State | Reg. Expires | Permanent Reg. | VIN | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| Trailer Two: | License Number | State | Reg. Expires | Permanent Reg. | VIN | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| Vehicle Traveling: | Direction | On Street, Road, Highway | At Est. Speed | Posted Speed | Total Lanes |
|---|---|---|---|---|---|
| | North | SR 37/S FLORIDA AVE | 0 | 45 | 8 |

| CMV Configuration | Cargo Body Type | Area of Initial Impact | Most Damaged Area |
|---|---|---|---|

| Comm GVWR/GCWR | Trailer Type (trailer one) | Trailer Type (trailer two) | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer |
|---|---|---|---|---|
| 4 Not Applicable | | | | |

| Haz. Mat. Release | Haz Mat. Placard | Number | Class |
|---|---|---|---|

| Motor Carrier Name | US DOT Number |
|---|---|

| Motor Carrier Address | City and State | Zip Code | Phone Number |
|---|---|---|---|

| Comm/Non-Commercial | Vehicle Body Type | Vehicle Defects (one) | Vehicle Defects (two) | Emergency Vehicle Use | Speciaul Function of MV |
|---|---|---|---|---|---|
| | 1 Passenger Car | 1 None | | 1 No | 1 No Special Function |

| Vehicle Maneuver Action | Trafficway | Roadway Grade | Roadway Alignment | Most Harmful Event | Most Harmful Event Detail |
|---|---|---|---|---|---|
| 13 Stopped in Traffic | 4 Two-Way, Divided, Positive Median Barrier | 1 Level | 1 Straight | 2 Collision with Non-Fixed Object | 14 Motor Vehicle in Transport |

| Traffic Control Device For This Vehicle | First (1) Sequence of Events | Second (2) Sequence of Events | Third (3) Sequence of Events | Fourth (4) Sequence of Events |
|---|---|---|---|---|
| 1 No Controls | 2 Collision with Non-Fixed Object 14 Motor Vehicle in Transport | | | |

## VEHICLE (Check if Commercial) [ ]

| Vehicle | Motor Vehicle Type | Hit and Run | Veh License Number | State | Reg. Expires | Permanent Reg. | VIN |
|---|---|---|---|---|---|---|---|
| 1 | 1 Vehicle in Transport | 1 No | MBI336 | FL | 31/Jan/2019 | | 2GCEK19T841388690 |

| Year | Make | Model | Style | Color | Extent of Damage | Est. Damage | Towed Due To Damage | Vehicle Removed By | Rotation |
|---|---|---|---|---|---|---|---|---|---|
| 2004 | CHEV | SILVERADO | PK | BLK | None | 0 | No | DYLAN BIVENS | Rotation |

| Insurance Company | Insurance Policy Number |
|---|---|
| PROGRESSIVE AMERICAN IN | 914939886 |

USAA Confidential

Official copy obtained through BuyCrash.co

| Date of Crash | | Date of Report | | Invest. Agency Report Number | | HSMV Crash Report Number |
|---|---|---|---|---|---|---|
| 21/Jul/2020 | | | | | | |

| Name of Vehicle Owner (Check Box If Business) | | Current Address (Number and Street) | City and State | Zip Code |
|---|---|---|---|---|
| ANTHONY LEWIS BIVENS | ☐ | 605 KIRKSWOOD CT | LAKELAND FL | 33813 |

| Trailer One: | License Number | State | Reg. Expires | Permanent Reg. | VIN | | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Trailer Two: | License Number | State | Reg. Expires | Permanent Reg. | VIN | | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Vehicle Traveling: | Direction | On Street, Road, Highway | | At Est. Speed | Posted Speed | Total Lanes |
|---|---|---|---|---|---|---|
| | North | SR 37/FLORIDA AVE S | | 3 | 45 | 8 |

| CMV Configuration | Cargo Body Type | Area of Initial Impact | Most Damaged Area |
|---|---|---|---|
| | | | |

| Comm GVWR/GCWR | Trailer Type (trailer one) | Trailer Type (trailer two) | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer |
|---|---|---|---|---|
| 4 Not Applicable | | | | |

| Haz. Mat. Release | Haz. Mat. Placard | Number | Class |
|---|---|---|---|
| | | | |

| Motor Carrier Name | | US DOT Number |
|---|---|---|
| | | |

| Motor Carrier Address | City and State | Zip Code | Phone Number |
|---|---|---|---|
| | | | |

| Comm/Non-Commercial | Vehicle Body Type | Vehicle Defects (one) | Vehicle Defects (two) | Emergency Vehicle Use | Special Function of MV |
|---|---|---|---|---|---|
| | 3 Pickup | 1 None | | 1 No | 1 No Special Function |

| Vehicle Maneuver Action | Trafficway | Roadway Grade | Roadway Alignment | Most Harmful Event | Most Harmful Event Detail |
|---|---|---|---|---|---|
| 77 Other, Explain in Narrative | 4 Two-Way, Divided, Positive Median Barrier | 1 Level | 1 Straight | 2 Collision with Non-Fixed Object | 14 Motor Vehicle in Transport |

| Traffic Control Device For This Vehicle | First (1) Sequence of Events | Second (2) Sequence of Events | Third (3) Sequence of Events | Fourth (4) Sequence of Events |
|---|---|---|---|---|
| 1 No Controls | 2 Collision with Non-Fixed Object 14 Motor Vehicle in Transport | | | |

## PERSON RECORD

| Person# | Description | Vehicle # | Name | Date of Birth | Sex | Phone Number | Re-Exam |
|---|---|---|---|---|---|---|---|
| 1 | 1 Driver | 1 | DYLAN KRISTOPH BIVENS | 02/Jul/2000 | 1 Male | 8636406397 | No |

| Address | City | State | Zip Code |
|---|---|---|---|
| 605 KIRKSWOOD CT | LAKELAND | FL | 33813 |

| Driver License Number | State | Expires | DL Type | Req. End. Endorsement | Injury Severity | Ejection |
|---|---|---|---|---|---|---|
| B152171002420 | FL | 02/Jul/2024 | 5 E/Operator | 3 No Req | 1 None | 1 Not Ejected |

| Restraint System | Air Bag Deployed | Helmet Use | Eye Protection | Seating Location Seat | Seating Location Row | Seating Location Other |
|---|---|---|---|---|---|---|
| 3 Shoulder and Lap Belt Used | 2 Not Deployed | | | 1 Left | 1 Front | 1 Not Applicable |

| Drivers Actions at Time of Crash (first) | Drivers Actions at Time of Crash (second) | Driver Distracted By | Vision Obstruction |
|---|---|---|---|
| 77 Other Contributing Action | | 3 Other Electronic Device (navigation device, DVD player) | 1 Vision Not Obscured |

| Drivers Actions at Time of Crash (third) | Drivers Actions at Time of Crash (fourth) | Drivers Condition at Time of Crash |
|---|---|---|
| | | 1 Apparently Normal |

| Suspected Alcohol Use | Alcohol Tested | Alcohol Test Type | Alcohol Test Result | BAC | Suspected Drug Use | Drug Tested | Drug Test Type | Drug Test Result |
|---|---|---|---|---|---|---|---|---|
| 1 No | | | | | 1 No | | | |

| Source of Transport to Medical Facility | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|
| 1 Not Transported | | | |

## PERSON RECORD

| Person# | Description | Vehicle # | Name | Date of Birth | Sex | Phone Number | Re-Exam |
|---|---|---|---|---|---|---|---|
| 2 | 1 Driver | 2 | CAROLYN DENISE LEE | 16/Sep/1962 | 2 Female | 8636064129 | No |

| Address | City | State | Zip Code |
|---|---|---|---|
| 137 WESTOVER ST | LAKELAND | FL | 33803 |

| Driver License Number | State | Expires | DL Type | Req. End. Endorsement | Injury Severity | Ejection |
|---|---|---|---|---|---|---|
| L000104628360 | FL | 16/Sep/2018 | 5 E/Operator | 3 No Req | 1 None | 1 Not Ejected |

| Restraint System | Air Bag Deployed | Helmet Use | Eye Protection | Seating Location Seat | Seating Location Row | Seating Location Other |
|---|---|---|---|---|---|---|
| 3 Shoulder and Lap Belt Used | 2 Not Deployed | | | 1 Left | 1 Front | 1 Not Applicable |

| Drivers Actions at Time of Crash (first) | Drivers Actions at Time of Crash (second) | Driver Distracted By | Vision Obstruction |
|---|---|---|---|
| 1 No Contributing Action | | 1 Not Distracted | 1 Vision Not Obscured |

| Drivers Actions at Time of Crash (third) | Drivers Actions at Time of Crash (fourth) | Drivers Condition at Time of Crash |
|---|---|---|
| | | 1 Apparently Normal |

| Suspected Alcohol Use | Alcohol Tested | Alcohol Test Type | Alcohol Test Result | BAC | Suspected Drug Use | Drug Tested | Drug Test Type | Drug Test Result |
|---|---|---|---|---|---|---|---|---|
| 1 No | | | | | 1 No | | | |

| Source of Transport to Medical Facility | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|
| 1 Not Transported | | | |

## PERSON RECORD

| Person# | Description | Vehicle # | Name | Date of Birth | Sex | Injury Severity | Ejection |
|---|---|---|---|---|---|---|---|
| 3 | 3 Passenger | 2 | CHERRY QUINN POPE | 03/Jul/1960 | 2 Female | 1 None | 1 Not Ejected |

| Address | City | State | Zip Code |
|---|---|---|---|
| 1301 VALLEY GROVE DR | SEFFNER | FL | 33584 |

USAA Confidential

Official copy obtained through BuyCrash.com

| Date of Crash | Date of Report | Invest. Agency Report Number | HSMV Crash Report Number |
|---|---|---|---|
| 21/Jul/2020 | | | |

| Restraint System | Air Bag Deployed | Helmet Use | Eye Protection | Seating Location Seat | Seating Location Row | Seating Location Other |
|---|---|---|---|---|---|---|
| 3 Shoulder and Lap Belt Used | 2 Not Deployed | | | 3 | 1 | 1 |

| Source of Transport to Medical Facility | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|
| 1 Not Transported | | | |

## PERSON RECORD

| Person# | Description | Vehicle # | Name | Date of Birth | Sex | Injury Severity | Ejection |
|---|---|---|---|---|---|---|---|
| 4 | 3 Passenger | 2 | JASMINE JANAY COOPER | 23/Feb/1993 | 2 Female | 2 Possible | 1 Not Ejected |

| Address | City | State | Zip Code |
|---|---|---|---|
| 137 WESTOVER ST | LAKELAND | FL | 33803 |

| Restraint System | Air Bag Deployed | Helmet Use | Eye Protection | Seating Location Seat | Seating Location Row | Seating Location Other |
|---|---|---|---|---|---|---|
| 3 Shoulder and Lap Belt Used | 2 Not Deployed | | | 1 | 2 | 1 |

| Source of Transport to Medical Facility | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|
| 1 Not Transported | | | |

## PERSON RECORD

| Person# | Description | Vehicle # | Name | Date of Birth | Sex | Injury Severity | Ejection |
|---|---|---|---|---|---|---|---|
| 5 | 3 Passenger | 2 | MARILYN CHERIESE POPE | 10/Oct/1960 | 2 Female | 1 None | 1 Not Ejected |

| Address | City | State | Zip Code |
|---|---|---|---|
| 137 WESTOVER ST | LAKELAND | FL | 33803 |

| Restraint System | Air Bag Deployed | Helmet Use | Eye Protection | Seating Location Seat | Seating Location Row | Seating Location Other |
|---|---|---|---|---|---|---|
| 3 Shoulder and Lap Belt Used | 2 Not Deployed | | | 3 | 2 | 1 |

| Source of Transport to Medical Facility | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|
| 1 Not Transported | | | |

## NARRATIVE

INCIDENT SCENE:

The crash occurred on State Road 37/South Florida Avenue, approximately 93 feet south of the intersection of the State Road 570/Polk Parkway Eastbound on-ramp in Lakeland, Florida.

V1 is a black Chevrolet Silverado bearing Florida tag MBI336.

V2 is a tan Ford Fusion bearing Florida tag 0376JS.

INVESTIGATION:

V2 was traveling north on State Road 37/South Florida Avenue and was stopped for traffic approximately 75 feet south of the intersection of the State Road 570/Polk Parkway eastbound on-ramp. V1 was stopped directly behind V2.

D1 advised he believed V2 started to move and he began moving his vehicle forward. D1 advised he looked down at his radio briefly as he began moving. V2 stopped and the front of V1 struck the rear of V2.

The left rear passenger of V2 was pregnant and complained of discomfort in her back. The driver of V2 advised she was going to take the passenger to the hospital for an evaluation. No other injuries were reported.

The drivers of both vehicles advised there was no damage to their vehicles.

OFFICER ACTIONS:

Based on the lack of damage to the vehicles, I have not issued a citation.

Both vehicles were removed from the scene by their respective drivers.

I have no other information to report.

## REPORTING OFFICER

| ID/Badge # | Rank and Name | Department | Type of Department |
|---|---|---|---|
| 279 | OFFICER CORY SUTTLE | LAKELAND POLICE DEPARTMENT | PD |

USAA Confidential

Official copy obtained through BuyCrash.com

0901119ca002daae

Case 8:22-cv-01549-MSS-TGW Document 1 Filed 07/08/22 Page 65 of 157 PageID 65



S. Rd 37 (South Florida Av) →

SR 570/Polk Pkwy
EB On-Ramp

Vehicle 2

Vehicle 1

N

Official copy obtained through BuyCrash.c

0901119ca002daae

USAA Confidential



# Voter Information Lookup

Please find your voter registration information below.

Full Name:
**CHERRY QUINN POPE**

Street Address:
**1802 GREEN RIDGE RD**

City:
**TAMPA**

Zip Code:
**33619**

County Name:
**HILLSBOROUGH**

Voter Identification Number:
**111059362**

Date Of Registration:
**7/10/1997**

Party:
**Florida Democratic Party**

Voter Status:
**Inactive\***

EXHIBIT
**D**

\*An inactive voter is a voter who is sent an address confirmation final notice and does not return the postage prepaid form within 30 days or for whom a final notice was returned as undeliverable. An inactive voter is still eligible to vote. However, if the inactive voter does not present to vote, request a vote-by-mail ballot or update his or her registration record after two general elections, the inactive voter will be removed from the registration rolls. Please contact your county Supervisor of Elections to confirm or update your address.

Access Ballot and Precinct Information available through your county Supervisor of Elections' (https://dos.myflorida.com/elections/for-voters/check-your-voter-status-and-polling-place/voter-precinct-lookup/) website.

New Search (/en/CheckVoterStatus)

Please email BVRSHelp@dos.myflorida.com (mailto:BVRSHelp@dos.myflorida.com) for website assistance.



**Ron DeSantis, Governor**
**Cord Byrd, Secretary of**
**State**



# Florida Department of State

Privacy Policy (http://dos.myflorida.com/privacy-policy/)
| Accessibility (http://dos.myflorida.com/accessibility/)
| Site Map (http://dos.myflorida.com/site-map/)
Communications
(http://dos.myflorida.com/communications/)
| Connect
(http://dos.myflorida.com/communications/connect/)

R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399-0250

**Voter Assistance Hotline:**
1.866.308.6739
**Hours:** Monday - Friday 8:00 AM - 5:00
PM (Eastern Time)
If hearing or speech impaired, please
contact the Division using the **Florida**
**Relay Service**
(https://www.ftri.org/relay),
1.800.955.8771 (TTY) or
1.800.955.8770 (Voice) or 1-800-955-
1339 (ASCII), or
1.877.955.8773 (español a español ).

## Questions or comments? Contact Us (mailto:BVRSHelp@dos.myflorida.com)

Under Florida law, e-mail addresses are public records. If you
do not want your e-mail address released in response to a
public records request, do not send electronic mail to this entity.
Instead, contact this office by phone or in writing.

Copyright (http://dos.myflorida.com/copyright/) © 2019 State of
Florida, Florida Department of State.





0901119cb09a6ee9



Chris Limberopoulos, Esquire*
Felix Vega, Esquire
Melissa Hill, Esquire
Christopher J. Castillo, Esquire
John Distasio, Esquire
Robert Schmidt, Senior Case Manager
*- National Board Certified Trial Lawyer

January 11, 2022

```
┌──────────┐
│ EXHIBIT  │
│    E     │
└──────────┘
```

***Via Facsimile Only to 800.531.8669***
USAA
PO Box 26001
Daphne, AL  36526

|                |                  |
|----------------|------------------|
| Our Client:    | Cherry Pope      |
| Your Insured:  | Lenwood Pope     |
| Your Claim:    | 025770959-009    |
| Date of Loss:  | July 21, 2018    |

Dear USAA:

As you are aware, this law firm represents the interests of Cherry Pope regarding personal injuries she sustained in the above-referenced automobile crash. Please consider this our demand for settlement on behalf of our client. Enclosed please find the documentation necessary to substantiate our client's claim for damages. These documents are submitted to you in an effort to facilitate an amicable resolution of this matter. At the time USAA Insurance provided its disclosures, it was unaware of any excess coverage to supplement the $50,000 in stacked uninsured motorist coverage on the subject policy. Please forward any new developments in this assessment at once.

## LIABILITY

On July 21, 2018, at approximately 6:40 PM, our client, Cherry Pope, was a properly restrained back seat passenger of a vehicle traveling northbound on State Road 37 at or near the intersection with State Road 570 in Polk County Florida. At the same time and place, an underinsured driver, Dylan Kristoph Bivins, who was traveling directly behind our client, rear-ended our client's vehicle. Investigating officers determined that Mr. Bivins was distracted by his car stereo. There exists a presumption of negligence in Florida concerning rear-end crashes. As a restrained passenger, our client bore no fault.

## DAMAGES

Our client did not anticipate the impact which was directly where she was sitting and was thrown backwards and then forwards with unexpected force. She was taken to the emergency room for examination and care.

She was examined at Lakeland Regional Hospital and a number of diagnostic tests were performed and she was given prescriptions and follow up instructions.

Primary Office:  407 N Howard Ave, Ste 100, Tampa, Florida 33606 (813) 463-8880 www.floridalawgroup.org

USAA Confidential

Ms. Pope presented to the Chambers Medical Group a few days later with increased headaches of moderate intensity, along with concentration difficulties, ringing in the ears, neck pain and stiffness, pain moving the neck, mid back pain, low back pain, pain in the back if standing or sitting for prolonged periods of time, and trouble bending over or straightening back up. Ms. Pope gets anxious or nervous to ride in or drive a car since the crash. She works as a medical technician for St Joseph's Women's Hospital. Upon examination, the cervical spine reveals tight and tender paravertebral muscle fibers. Active ranges of motion were tested and reveal flexion, extension, left and right lateral bending, and left and right rotation restricted. The thoracolumbar spine reveals tight and tender paravertebral muscle fibers. Active ranges of motion were tested and reveal flexion, extension, and left and right lateral bending are restricted with pain. Initial diagnoses included post-traumatic headaches, cervical strain/sprain, thoracic strain/sprain, lumbar strain/sprain, and somatic dysfunctions of the cervical, thoracic, and lumbar spinal regions. A regimen of conservative care was designed for her. She was referred for diagnostic imaging.

1.   MRI of the Cervical Spine (Chambers) 7.27.21:

   a.   Reversal of the upper cervical lordosis.
   b.   C2-3 disc herniation impresses upon the thecal sac with mild to moderate central stenosis and spinal cord deformity.
   c.   C3-4 disc herniation impresses upon the thecal sac with mild to moderate central stenosis and spinal cord deformity.
   d.   C4-5 disc herniation impresses upon the ventral thecal sac with mild to moderate central stenosis and spinal cord deformity.
   e.   C5-6 shallow disc herniation impresses upon the ventral thecal sac with mild stenosis.
   f.   C6-7 disc bulge impresses upon the thecal sac.
   g.   C7-T1 anterolisthesis of C7 on T1. Facet arthropathy narrows the bilateral neural foramina.

2.   MRI of the Lumbar Spine (Chambers) 7.27.21:

   a.   L4-5 Loss of disc height and hydration with developing anterolisthesis of L4 on L5. Developing bilateral posterolateral disc herniation with annular tear and central high intensity zone, most prominent on the left and facet arthropathy produces moderate bilateral neural foraminal stenosis, most stenotic on the left.
   b.   L5-S1 posterolisthesis of L5 on S1. Disc herniation incompletely effaces the ventral epidural fat in the present exam. Facet arthropathy produces mild bilateral neural foraminal stenosis, again most stenotic on the right.

Ms. Pope then came under the care of board certified neurologist, Kimberly Tobon, DO, and the Neurology and Physical Therapy Centers of Tampa Bay. She presented to Dr. Tobon for a neurological evaluation, presenting with complaints of nervousness about driving, headaches associated with throbbing, tension-type pain, photophobia, phonophobia, nausea, and dizziness, bilateral shoulder pain, neck pain radiating to the bilateral shoulders, low back pain radiating to

0901119cafd2453d

USAA Confidential

the bilateral buttocks and right leg, with intermittent numbness and tingling, sexual dysfunction, intermittent dizziness accompanied by tinnitus, intermittent forgetfulness and impaired concentration. She misplaces objects and has to write things down to remember them. She gave Dr. Tobon a history of two prior crashes, with the more recent necessitating a radiofrequency ablation in the lumbar area. She is unaware if the procedure helped because she had this third crash, which aggravated all her prior symptoms. Upon examination, pain to palpation was noted in the high cervical region and base of skull. Positive Hoffman's on the left. Cervical range of motion on lateral flexion was limited to 10 degrees. Rotation was limited to 10 degrees. Spasms were noted. Lumbar range of motion on flexion was limited to 15 degrees. Extreme pain with returning to standing position. Spasms were noted. Dr. Tobon reviewed the aforementioned MRIs and compared them to her prior MRIs of March 28, 2017. Videonystagmography testing revealed right benign paroxysmal positional vertigo. Canalith repositioning maneuver was performed to the right without incident. Brief Cognitive Status Examination revealed errors in the areas of processing speed (mental control and inhibition completion times) and inhibition. Dr. Tobon diagnosed her with post-traumatic stress disorder, post traumatic intractable headaches, vertigo, cervical and lumbar strain and sprain with bilateral radiculopathy. She was also examined by Shelly Tindell-Nodine, Psy.D for her stress disorders. Our client reported decreased attention span, memory deficits, and decreased processing speed. She has anxiety, depression, and has become socially withdrawn. She was diagnosed with PTSD, and severe major depressive disorder. Counselling was recommended.

Ms. Pope also consulted with orthopedic surgeon, James Ronzo, DO at BioSpine Institute. She presented March 14, 2019 with MR imagery on disc from 2017 and 2018 as well as complaints of neck and back pain and limitations. Upon examination, it was noted she ambulated with an antalgic gait, restricted cervical ranges of motion with extension, flexion, rotation, and lateral bending. Her pain was made worse in the neck with forward flexion, extension, side bending, and rotation. Her pain was made worse in the back with forward flexion, extension, side bending, and rotation. Tenderness to palpation was noted bilaterally throughout her spinal column down to buttocks. Sensation was decreased bilaterally at C5 and to the left at L4 and L5.

Dr. Ronzo reviewed the diagnostic imagery. After his examination and review, he opined Ms. Pope would benefit from a right approach lumbar four to lumbar five posterior laminectomy or partial laminectomy vs. laminotomy or partial laminotomy with possible discectomy with additional levels if needed. Concerning the neck, Dr. Ronzo opined she would benefit from a cervical discectomy and fusion with interbody cage and plate instrumentation cervical three to cervical five. He also mentioned she can consider medial branch blocks with radiofrequency ablation for temporary relief of her neck and low back pain.

Due to the fact that the patient has moderate spinal stenosis, it will require Dr. Ronzo to decompress each nerve root. The L4 nerve root around the pedicle of L4 and into the neuroforamen bilaterally thus requiring a laminectomy to be performed of L4 and L5 to get adequate decompression. Following the lumbar surgery, patient will be in an LSO brace for 2 weeks. Patient will be allowed minimal bending, lifting, and twisting for this time period. For sedentary work, the patient may return to work 3-5 days following surgery. For strenuous work, patient must be out of work for 2 weeks and may return to light duty for the following 2 weeks. No lifting greater than 20 pounds for 4 weeks. Following the cervical surgery, the patient will be

USAA Confidential

in an aspen collar 24/7 for 2 months' time. Patient will not be allowed to do any overhead reaching/lifting for 2 months. For sedentary work, the patient may return to work 3-5 days following surgery. For strenuous work, the patient must be out of work for 2 months, and then light duty work will be allowed for 4 weeks.

She was referred to Omni Pain Care for her cervical spine pain and headaches. On March 15, 2021 she was recommended for anterior cervical discectomy and cervical decompression surgery at C3-6 with therapeutic radiofrequency ablation of medical branch nerves at bilateral C4-7 joints. The estimated costs for this surgical procedure are over $40,000.00 not including the facility fees which are usually around $26,000.00.

| Medical Provider | Date(s) of Service | Cost |
|---|---|---|
| Lakeland Regional Medical Center | 7/21/2018 | $1,251.81 |
| Osprey Emergency Physicians | 7/21/2018 | $1,231.00 |
| Chambers Medical Group | 7/25/18-9/1/20 | $13,021.00 |
| Neurology and PT of Tampa Bay | 11/5/18-11/9/18 | $5,184.00 |
| BioSpine Institute | 3/14/2019 | $1,282.00 |
| Omni Pain Care | 12/28/20-9/8/21 | $21,795.00 |
| **TOTAL** | | **$43,764.81** |

## SUMMARY

In consideration of the aforementioned liability assessment, damages, applicable law, and probable jury instructions, we are presently prepared to recommend to Cherry Pope that we settle this claim on her behalf for the stacked policy limits of $100,000.00. In the event USAA has any reservations concerning the permanency of Cherry Pope's injuries sustained from this crash, or our client's right to collect past economic damages, I have enclosed a copy of *Tompkins v. Auto-Owners* for your review. To the extent that you may wish to consider any of Cherry Pope's injuries to be pre-existing, I have enclosed a copy of Florida Standard Jury Instruction 501.5(a) for review, as you may deem appropriate.

Accordingly, we are demanding a check be delivered to our office in the amount of $100,000.00 and made payable to The Florida Law Group Trust Account f/b/o Cherry Pope, to this office no later than 30 days from the date you receive this letter.

This money will be held in the firm's IOTA Trust Account pending delivery of the executed release of claims. In order to expedite this matter and to avoid unnecessary contention, we require you deliver the proposed release within 10 days of settlement agreement.

An essential condition of this settlement offer is that Cherry Pope expressly reserves any and all causes of action which may arise from this accident, including any potential action for medical malpractice, and that the settlement agreement shall not release any nonparties to the agreement from any outstanding liability.

Our tax identification number is 45-2446598.

USAA Confidential

At this time, and for a period of 30 days, this claim may be resolved conditioned on the following terms:

1.      Payment of $100,000.00 within 30 days of your receipt;

2.      An acceptable release within 10 days of settlement agreement;

Total Settlement Proposed:     $100,000.00

Finally, copies of any correspondence or communication provided by your company to your insured or their representative may not reference my client's specific medical history, injuries or treatment. Any such pre-suit disclosure violates State and Federal patient privacy rights.

Sincerely,

*Melissa Hill*

Melissa Hill, Esquire
The Florida Law Group
Melissa@floridalawgroup.org

MH/rss/ss

0901119cafd2453d

USAA Confidential



**FLORIDA**
**DEPARTMENT OF**
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

| | |
|---|---|
| Filing Number: | **615900** |
| Filing Accepted: | **3/14/2022** |

EXHIBIT

**F**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **POPE CHERRY** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FL  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **POPE LENWOOD** |
| Policy #: | **025770959-7102** |
| Claim #: | **025770959-009** |

### Attorney

| | |
|---|---|
| Name: | **JOHN DISTASIO** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FLORIDA  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **USAA GENERAL INDEMNITY COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**STEVEN COBB**

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 10/14/2008

USAA Confidential

0901119cb09c050c



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:      **615900**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.**  please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**      **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**"We will pay compensatory damages which a covered person in legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI sustained by a covered person and caused by an auto accident."**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**On July 21, 2018, Cherry Pope was a seat belted passenger in an automobile that was struck from behind on South Florida Avenue in Polk County, Florida. The at-fault driver admitted to striking Ms. Pope's vehicle from behind, according to Officery Suttle's crash report, # 87796806. Ms. Pope sustained injuries, permanent in nature, to her C-Spine and Lumbar Spine. Most notably, Ms. Pope's Lumber spine contained injuries of L4 on LS. Developing bilateral rusterolateral disc herniation with annular tear AND L5-S I level: Slight postcrolisthcsis of 1.5 on Sl. Disc herniation. These injuries were different in kind than any previous injury to this area of her body. She also experienced emotional distress, anxiety, pain and suffering. Ms. Pope sustained over $43,000 in medical treatment. She has been out of work since July 2021 on disability. All requisite paperwork has been provided to USAA. USAA claim adjuster Steven Cobb was presented with a demand to settle the UM claim for $61,000 based on her medical bills alone, on or about the week of March 7, 2022. Mr. Cobb counteroffered at $35,000, via phone, shortly thereafter. Plaintiff's counsel subsequently discovered that Ms. Pope was out of work on disability due to the car crash and increased Ms. Pope's offer to $100,000 in light of the new evidence. Mr. Cobb requested the paperwork to reflect the wage loss claim. On March 11, 2022, Plaintiff's counsel sent Ms. Pope's Cigna check and Dr. Dawson's records, indicating that Ms. Pope would be unable to return to work. The paperwork reflected Ms. Pope's loss of income and Dr. Dawson's medical notes, which explain the injuries as a cause of Ms. Pope's inability to work. Please specifically review pages 3, 7, and 13 of Dr. Dawson's evaluation, outlining her lumbar and motor vehicle accident. When the additional paperwork was submitted to Mr. Cobb, Plaintiff's counsel wrote via email, "When you have finished reviewing, please reach out to me to get her UM claim settled at a fair number. I am willing to meet in the middle on this, so let's get this done." In an act of continued retaliation, Mr. Cobb moves his offer down to $20,000. Ms. Pope produced more evidence of wage loss and was unjustly penalized by her own insurance company, USAA. The offer made by USAA, which was significantly less than Ms. Pope's out-of-pocket medical expenses, did not take into consideration her pain and suffering, future medicals, nor wage claim which her medical records and reports show she will need. I am requesting that USAA fairly settle this claim and not unnecessarily punish Ms. Pope for a car accident that wasn't her fault.**

### Comments

DFS-10-363
Rev. 10/14/2008

**USAA Confidential**

0901119cb09c050c

| User Id | Date Added | Comment |
|---------|------------|---------|
|         |            |         |

DFS-10-363
Rev. 10/14/2008

0901119cb09c050c

USAA Confidential

IN THE CIRCUIT COURT, TENTH
JUDICIAL CIRCUIT, IN AND FOR POLK
COUNTY, FLORIDA

CASE NO.:    2022-CA-001788

<div style="border:1px solid black; display:inline-block; padding:8px;">

EXHIBIT

**G**

</div>

CHERRY POPE,

    Plaintiff,

vs.

USAA GENERAL INDEMNITY COMPANY,

    Defendant.

_____

## **DEFENDANT'S NOTICE OF FILING NOTICE OF REMOVAL**

Defendant USAA GENERAL INDEMNITY COMPANY, by and through its undersigned attorney and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby gives notice it has filed on this date with the United States District Clerk of the Court for the Middle District of Florida, Tampa Division, its Notice of Removal.   (**Exhibit "1"**).

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by eService on July 8, 2022 to John C. Distasio, Esq. (john@floridalawgroup.org; service@floridalawgroup.org) 407 N. Howard Ave #100, Tampa, FL 33606.

**BOYD & JENERETTE, P.A.**

_____

JORDAN L. PARKER
Florida Bar No. 88766

04697091

AMANDA L. KIDD
Florida Bar No. 93229
KRISTEN M VAN DER LINDE
Florida Bar No. 0964573
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
904-353-6241 - Telephone
904-353-2863 - Facsimile
Attorneys for Defendant
Primary Address for E-service:
efiling@boydjen.com

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

CHERRY POPE

PLAINTIFF(S)

VS.

USAA GENERAL INDEMNITY COMPANY

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **2022CA-001788-0000-00** |
| **COURT:** | **10TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **POLK** |
| **DFS-SOP #:** | 22-000190806 |

<div style="border:1px solid black; text-align:center;">

EXHIBIT

**H**

</div>

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday, June 6, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, June 8, 2022 to the designated agent for the named entity as shown below.

      USAA GENERAL INDEMNITY COMPANY
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

JOHN DISTASIO
ATTORNEY
THE FLORIDA LAW GROUP
407 N HOWARD AVE
UNIT 100
TAMPA, FL 33606

GC1

Office of the General Counsel - Service of Process Section
200 East Gaines Street - P.O. Box 6200 - Tallahassee, FL 32314-6200 - (850)413-4200

USAA Confidential

0901119cb1c11b9a

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION**

**CHERRY POPE,**

      Plaintiff,

                          **CASE NUMBER: 2022-CA-001788**

v.

**USAA GENERAL INDEMNITY COMPANY,**

      **Defendants.**

_____/

<p align="center"><u>**SUMMONS**</u></p>

**THE STATE OF FLORIDA:**
**TO EACH SHERIFF OF THE STATE**:

      **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint, in the above-styled cause upon the Defendant:

<p align="center">**USAA GENERAL INDEMNITY COMPANY
C/O FLORIDA CHIEF FINANCIAL OFFICE AS RA
200 EAST GAINES STREET
TALLAHASSEE, FL 32399-4201**</p>

      Said Defendant is required to serve written defenses to the said Complaint on Plaintiff's Attorney, whose name and address is:

<p align="center">THE FLORIDA LAW GROUP
John C. Distasio, Esquire
407 N. Howard Avenue, #100
Tampa, FL 33606
(813) 463-8880 Tel. / (844) 444-1154 Fax
<u>service@floridalawgroup.org</u></p>

**within twenty (20) days after service of this Summons**, exclusive of the day of service, and to file the original of those written defenses with the Clerk of this Court either before service on Plaintiff's Attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.



Dated: 05/27/2022

**STACY M. BUTTERFIELD ,** Clerk of the Circuit Court and Comptroller

57-2022CA-001788-0000-00

By_____
                       Deputy Clerk

USAA Confidential

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR POLK COUNTY, FLORIDA**
**CIVIL DIVISION**

CHERRY POPE,

      **Plaintiff,**

v.                                       **CASE NO.:**

USAA GENERAL INDEMNITY COMPANY,

                                          **JURY TRIAL DEMANDED**

      **Defendant.**

_____/

## COMPLAINT

COMES NOW the Plaintiffs, CHERRY POPE, by and through her undersigned counsel and sues the Defendant, USAA GENERAL INDEMNITY COMPANY, and alleges:

## GENERAL ALLEGATIONS

1.      This is an action for damages arising from a breach of contract of uninsured/underinsured motorist coverage in excess of Thirty Thousand ($30,000.00) dollars.

2.      Venue for this action is the Tenth Judicial Circuit, in and for Polk County, State of Florida, Civil Division.

3.      That at all times material hereto, the Plaintiffs, CHERRY POPE, is a resident of Polk County, Florida.

4.      That all times material hereto, the Defendant, USAA GENERAL INDEMNITY COMPANY, was licensed to conduct business and sell insurance in the State of Florida, including those containing coverage for uninsured/underinsured motorist coverage.

5.      At all times material hereto, Defendant, USAA GENERAL INDEMNITY COMPANY, insured Plaintiff, CHERRY POPE, through a policy of insurance containing

uninsured/underinsured motorist coverage.  Said policy, number ███████████ was valid and in force on the date of this accident, July 21, 2018.

6.      A copy of the insurance policy which is the subject of this lawsuit is attached as Exhibit "A."

<div align="center">

**COUNT I-UNINSURED/UNDERINSURED MOTORIST CLAIM**
**AGAINST DEFENDANT, USAA GENERAL INDEMNITY COMPANY**

</div>

7.      Plaintiff, CHERRY POPE, iterates and re-alleges all of the allegations contained in paragraphs 1 through 6 of this complaint as though fully restated herein.

8.      That on or about July 21, 2018, Plaintiff, CHERRY POPE, was a passenger in a motor vehicle that was stopped near the intersection of South Florida Avenue and Polk Parkway in Lakeland, Polk County Florida.

9.      That on or about July 21, 2018, tortfeasor, Dylan Kristoph Bivens, was operating his motor vehicle and was traveling directly behind the plaintiff vehicle near the intersection of South Florida Avenue and Polk Parkway in Lakeland, Polk County, Florida.

10.      That at said time and place, tortfeasor, Dylan Kristoph Bivens, did operate, maintain and/or control said motor vehicle in such a negligent manner, so as to cause his motor vehicle to collide with the rear of the Plaintiff's motor vehicle.

11.      The tortfeasor, Dylan Kristoph Bivens, was uninsured or underinsured.

12.      Plaintiff has complied with all conditions precedent for recovering uninsured/underinsured motorist benefits under the above policy and the Defendant has failed to fairly resolve the claim for damages sustained, when it could have and should have done so.

13.      That, as a result of the negligence of the uninsured/underinsured tortfeasor, Dylan Kristoph Bivens, Plaintiff, CHERRY POPE, has suffered in the past, and will continue to suffer in the future, the following damages:

<div align="center">2</div>

a.      Permanent personal injuries within a reasonable degree of medical probability;

b.      Pain and suffering; past, present and future;

c.      Physical limitations and impairments;

d.      Decreased capacity for the enjoyment of life and decrease of life choices;

e.      Loss of earnings, past, present, and future; and

f.      Medical expenses for the care and treatment of her injuries.

14.    As a result of Defendant's breach of the uninsured/underinsured motorist conditions of the insurance policy herein at issue, Plaintiff has been damaged by not receiving compensation for her personal injuries as alleged above under the terms of the insurance policy.

15.    The injuries consist in whole or in part of a significant and permanent loss of bodily functions, and a permanent injury within a reasonable degree of medical probability.  However, should it be determined that any such bodily injuries are not permanent, then Plaintiff, CHERRY POPE, claims entitlement to all damages resulting from non-permanent injuries sustained and which are based upon benefits therefore not paid by Personal Injury Protection (No Fault Benefits).

WHEREFORE, the Plaintiff, CHERRY POPE, demands judgment against Defendant, USAA GENERAL INDEMNITY COMPANY, for damages plus prejudgment interest, the costs of this action, attorney's fees, if appropriate, and such other and further relief as this Court deems just and proper and further request trial by jury on all issues so triable.

### COUNT II—BAD FAITH (USAA GENERAL INDEMNITY COMPANY )

16. The Plaintiff, CHERRY POPE, realleges and incorporates all the allegations contained in paragraphs one (1) through fifteen (15) above as though fully restated herein.

3

17. Upon the issuance or renewal of said insurance policy number ▮▮▮▮▮▮▮▮ to the Plaintiff, CHERRY POPE, Defendant, USAA GENERAL INDEMNITY COMPANY , became obligated to comply with the duties prescribed in Section 624.155 and Section 626.9541, Florida Statutes.

18. The Plaintiff, CHERRY POPE, has performed all conditions precedent to the bringing of this action pursuant to 624.155, Florida Statutes, by providing written notice of the Defendant's violations pursuant to the Civil Remedy Notice of Insurer Violation filed with the State of Florida, Department of Financial Services and to the Defendant, USAA GENERAL INDEMNITY COMPANY. A copy of the Civil Remedy Notice is attached hereto as Exhibit "B".

19. Upon the issuance or renewal of the policy and pursuant to Section 624.155, the Defendant had a continuing duty to act fairly and honestly toward its insured, CHERRY POPE, and to attempt to settle the claim of CHERRY POPE when under all the circumstances it could and should have done so, had it acted fairly and honestly toward CHERRY POPE, and with due regard for her interests.

20. At all material times, Defendant knew that the combined inadequacy of Bodily Injury Liability carried by underinsured tortfeasor, Dylan Kristoff Bivens, were inadequate to compensate CHERRY POPE for the serious and permanent injuries and damages that she sustained in the July 21, 2018, collision.

21. The Defendant, USAA GENERAL INDEMNITY COMPANY, breached its continuing duties under Section 624.155, by not attempting in good faith to settle its insured's claims when under all the circumstances it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests. The Defendant breached its duties of good faith by, including but not limited to, the following acts and/or omissions: a. improperly

4

handling the claim; b. refusing to settle the claim in a timely manner; c. failing to tender the policy limits in a timely manner, especially in light of the serious and permanent injuries suffered by the Plaintiff, the value of which were clearly in excess of the policy limits; and d. failing to promptly settle the Plaintiff's claim when the obligation to settle the claim had become reasonably clear.

22. The Defendant, USAA GENERAL INDEMNITY COMPANY, also failed to cure the violations under Section 624.155, Florida Statutes, by failing to pay all sums owed within sixty (60) days of receipt of the Civil Remedy Notice Letter and by failing to otherwise correct the circumstances giving rise to the violation.

23. All the continuing acts of bad faith by the Defendant, USAA GENERAL INDEMNITY COMPANY, caused the Plaintiff's damages, including, but not limited to, mental pain and suffering, emotional distress, humiliation, anguish, loss of enjoyment of life, economic losses, costs and attorney's fees.

24. Pursuant to sections 627.727(10) and 624.155, Florida Statutes, in this action, Plaintiff is entitled to recover the full amount of damages caused by the negligence of the uninsured tortfeasor, including the amount of damages in excess of the $100,000 stacked underinsured motorist policy limits.

25. Additionally, Plaintiff seeks to recover her attorney's fees against Defendant, USAA GENERAL INDEMNITY COMPANY, pursuant to Section 627.428 and Section 624.155, Florida Statutes.

WHEREFORE, the Plaintiff, CHERRY POPE, demands judgment against Defendant, USAA GENERAL INDEMNITY COMPANY, for damages plus prejudgment interest, the costs of this action, attorney's fees, if appropriate, and such other and further relief as this Court deems just and proper and further request trial by jury on all issues so triable.

Respectfully submitted this 26th day of May 2022.

*John C. Distasio, Esq.*
John Distasio, Esq.
Florida Bar No. 096328
Chris Limberopoulos, Esq.
Florida Bar No. 341126
The Florida Law Group
407 N Howard Ave #100
Tampa, FL 33606
john@floridalawgroup.org
service@floridalawgroup.org
(813) 463-8880
*Attorneys for Plaintiff*

6

# EXHIBIT "A"

7

USAA General Indemnity Company

# STATEMENT OF
# LIABILITY REQUEST

MELISSA M HILL
THE FLORIDA LAW GROUP
407 N HOWARD AVE STE 100
TAMPA FL 33606-1575

## Review Our Response

December 7, 2021

Dear Melissa M Hill,

As you requested, we've attached a Statement of Liability Insurance form and a copy of the policy.

| | |
|---|---|
| Your client: | Cherry Q Pope |
| USAA policyholder: | Lenwood A Pope |
| Claim number: | 025770959-009 |
| Date of loss: | July 21, 2018 |
| Loss location: | Lakeland,Florida |
| Our tax ID number: | 74-1718283 |

## How to Contact Us

Please send any correspondence or questions to us using one of the following options and include the claim number on each page mailed or faxed:

   Address:

Auto Injury Solutions
Attn: USAA Medical Mail Department
P.O. Box 26001
Daphne, AL 36526

Fax:

866-828-2330

Phone:

1-800-531-8722, ext 44388

Sincerely,

Steven Cobb
Southeast Region
USAA General Indemnity Company

Attached: Statement of Liability Insurance
DEC

025770959 - 009 - 7991 - 51

54709-0920

901119caf74f35c

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

USAA Confidential

901119caf74f35c

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

USAA General Indemnity Company

# STATEMENT OF LIABILITY INSURANCE

I, Apryl Saunders, Claims Manager, state the following concerning each known policy of insurance, including Excess or Umbrella Insurance:

| | |
|---|---|
| The Name of Insurer: | USAA General Indemnity Company |
| The Name of Each Insured: | Lenwood A Pope |
| Claim Number: | 025770959 - 009 |
| Policy Number: | 025770959 - 7102 |
| Policy Effective Dates: | 07-06-2018 TO 01-06-2019 |
| Limits of Liability Coverage: | BI $50/100K, PD $50K |
| Umbrella: | No |
| Umbrella Limits: | N/A |
| Umbrella Policy Effective Dates: | |
| Additional Covered Persons: | Cherry Pope |
| Policy or Coverage Defenses: | This loss does not involve a covered automobile on this policy |

Under penalties of perjury, I declare that I have read the foregoing statement of liability and that the facts stated in it was true.

E-SIGNED by Apryl Saunders
on 2021-12-10 20:07:54 GMT

Apryl Saunders
Claims Manager
USAA General Indemnity Company

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

Sworn to and subscribed before me this _____ day of _____, 20 _____ by Apryl Saunders.
                                          Day                    Month              Year

_____
SIGNATURE OF NOTARY PUBLIC

Personally Known __X__ OR Produced Identification _____
Type of Identification Produced _____

901119caf74f35c

USAA Confidential

2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM

1901119caf74f35c



3485-02-h1-0000 | USAA Confidential

2022CA-001788-0000-00          Received in Polk 05/26/2022 04:01 PM

USAA GENERAL INDEMNITY COMPANY

(A Stock Insurance Company)
9800 Fredericksburg - San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

| ADDL INFO ON NEXT PAGE | MAIL MCH-M-I |
| --- | --- |

| State | 05,07 | | Veh | POLICY NUMBER |
| FL | 461461 | | Ter | 02577 09 59G 7102 2 |

POLICY PERIOD: (12:01 A.M. standard time)
EFFECTIVE JUL 06 2018 TO JAN 06 2019

**Named Insured and Address**

LENWOOD ARNEZ POPE

OPERATORS
01 LENWOOD ARNEZ POPE
02 CHERRY QUINN POPE
04 LYNQUISHIA Q POPE

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | Miles to Wk | Days per Week |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | | P | | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/C=Work/School B=Business F=Farm P=Pleasure
VEH 05   SEFFNER FL 33584-4567
VEH 07   SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES ("ACV" MEANS ACTUAL CASH VALUE) | LIMITS OF LIABILITY | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| PART A - LIABILITY | | | | | | | | | |
| BODILY INJURY EA PER $ | 50,000 | | | | | | | | |
| EA ACC $ | 100,000 | | 170.78 | | 145.04 | | | | |
| PROPERTY DAMAGE EA ACC $ | 50,000 | | 106.03 | | 82.39 | | | | |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | | |
| MAXIMUM BENEFITS $10,000 | | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | | | | | | | | |
| WORK LOSS N/A FOR NAMED INSD | | | | | | | | | |
| AND RESIDENT RELATIVES | | D 250 | 88.84 | D 250 | 126.14 | | | | |
| PART C - UNINSURED MOTORISTS STACKED | | | | | | | | | |
| BODILY INJURY EA PER $ | 50,000 | | | | | | | | |
| EA ACC $ | 100,000 | | 248.26 | | 256.35 | | | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | | |
| COMPREHENSIVE LOSS ACV LESS | | D 500 | 37.87 | D 500 | 70.50 | | | | |
| COLLISION LOSS ACV LESS | | D 500 | 99.61 | D 500 | 185.09 | | | | |
| | TOTAL PREMIUM - SEE FOLLOWING PAGE(S) | | | | | | | | |

LOSS PAYEE
VEH 05   PLATINUM AUTO FINANCE, CLEARWATER  FL
VEH 07   TD BANK NA, LEWISTON   ME

ENDORSEMENTS: ADDED 07-06-18 - RSGPFL(01)
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)- 5100FL(02)   ACCPOR(01)   A402FL(01)
INFORMATION FORMS: IIRSGPFL(01)   663FL(04)   999FL(03)
04 1

| 05 | RMM580000 | | 07 | RMF580000 | | | |

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY   on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53584-05-12

901119caf8d85b

USAA Confidential

2022CA-001788-0000-00       **Received in Polk 05/26/2022 04:01 PM**

**USAA GENERAL INDEMNITY COMPANY**
(A Stock Insurance Company)
9800 Fredericksburg · San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS

| State | 05 07 | | Veh. | | POLICY NUMBER |
|---|---|---|---|---|---|
| FL | 461 461 | | Terr | | 02577 09 59G 7102 2 |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE JUL 06 2018 TO JAN 06 2019**

**Named Insured and Address**

LENWOOD ARNEZ POPE

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 05 | 05 | FORD | F-150 | 4D | 6000 | 1FTPW12575FB73773 | | P | | |
| 07 | 18 | CHRYSLER | 300 4D TOU | 4D | 7500 | 2C3CCAAG9JH275325 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *WC=Work/School B=Business F=Farm P=Pleasure

VEH 05   SEFFNER FL 33584-4567
VEH 07   SEFFNER FL 33584-4567

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES      LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 05 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 07 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
| ECONOMY CLASS | | 23.66 | | | | | | |
| STANDARD CLASS | | | | 26.20 | | | | |
| TOWING AND LABOR | | 9.00 | | 9.00 | | | | |
| SELECTED VEHICLE FEATURES (LISTED | | 10.18 | | 20.48 | | | | |
| ON THE FEATURES DECLARATION) | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 794.23 | | 921.17 | | | | |

6 MONTH PREMIUM $ 1715.40
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

EARNED ACCIDENT FORGIVENESS APPLIES WITH FIVE YEARS CLEAN DRIVING WITH USAA.
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
VEH 05 - MEDICAL PAYMENTS
VEH 07 - MEDICAL PAYMENTS

| 05 | RMM58000D0 | | 07 | RMF58000D0 | | | | |

In WITNESS WHEREOF, we caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                   on this date MAY 22, 2018

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 G 05-12
53384-05-12

USAA Confidential



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## FLORIDA AUTO POLICY

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | | |
|---|---|---|
| | **DECLARATIONS PAGE** | |
| | Named Insured and Address | |
| | Policy Period | |
| | Operators | |
| | Description of Vehicle(s) | |
| | Coverages, Amounts of Insurance and Premiums | |
| | Endorsements | |
| Beginning on Page 3 | **Agreement and Definitions** | |
| Part A  4 | **Liability Coverage** | |
| | Definitions | |
| | Insuring Agreement | |
| | Bodily Injury Liability Coverage and Property Damage Liability Coverage | |
| | Limit of Liability | |
| | Supplementary Payments | |
| | Exclusions | |
| | Out of State Coverage | |
| | Financial Responsibility Required | |
| | Other Insurance | |
| Part B-1 8 | **Personal Injury Protection Coverage** | |
| | Definitions | |
| | Insuring Agreement | |
| | Limit of Liability | |
| | Application of Deductible | |
| | Exclusions | |
| | Other Insurance | |
| Part B-2 14 | **Medical Payments Coverage** | |
| | Definitions | |
| | Insuring Agreement | |
| | Limit of Liability | |
| | Exclusions | |
| | Other Insurance | |
| | Special Provisions | |

(Quick Reference continued on Page 2)

901119caf66997b

USAA Confidential

| Part C | 17 | Uninsured Motorists Coverage |
| --- | --- | --- |
| | | Definitions |
| | | Insuring Agreement |
| | | Limit of Liability (Stacked) |
| | | Exclusions |
| | | Other Insurance |
| | | Non-Duplication |
| Part D | 21 | Physical Damage Coverage |
| | | Definitions |
| | | Insuring Agreement |
| | |   Comprehensive Coverage |
| | |   Collision Coverage |
| | |   Rental Reimbursement Coverage |
| | |   USAA Roadside Assistance |
| | | Limit of Liability |
| | | Payment of Loss |
| | | Loss Payable Clause |
| | | Waiver of Collision Deductible |
| | | Exclusions |
| | | Mandatory Pre-Insurance Inspection |
| | | No Benefit to Bailee |
| | | Other Sources of Recovery |
| | | Appraisal |

| Part E | 26 | General Provisions |
| --- | --- | --- |
| | | Bankruptcy |
| | | Changes |
| | | Conformity to Law |
| | | Duties After an Accident or Loss |
| | | Legal Action Against Us |
| | | Mediation |
| | | Misrepresentation |
| | | Non-Duplication of Payment |
| | | Our Right to Recover Payment |
| | | Ownership |
| | | Policy Period and Territory |
| | | Reducing the Risk of Loss and |
| | |   Other Benefits |
| | | Spouse Access |
| | | Termination |
| | | Transfer of Your Interest in this |
| | |   Policy |
| | | Two or More Auto Policies |

5100FL(02) Rev. 10-12

)901119caf66997b

3-495-02-b1-0008-08 LS011-000111
USAA Confidential

2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM

# FLORIDA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We," "us,"** and **"our"** refer to the Company providing this insurance.

C. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing, or storing vehicles.

D. **"Bodily injury"** (referred to as BI).

   1. **"Bodily injury"** means bodily harm, sickness, disease, or death.

   2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. **"Driving contest or challenge"** includes, but is not limited to:

   1. A competition against other people, vehicles, or time; or

   2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. **"Family member"** means a person related to **you** by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

G. **"Fungi"** means any type or form of fungi, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi**.

H. **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. **"Motorcycle"** means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

J. **"Newly acquired vehicle."**

   1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

      a. A private passenger auto, pickup, **trailer**, or **van**;

      b. A **miscellaneous vehicle** that is not used in any business or occupation; or

      c. A **motorcycle**, but only if a **motorcycle** is shown on the current Declarations.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

2. We will automatically provide for the newly acquired vehicle the broadest coverages as are provided for any vehicle shown on the Declarations. If your policy does not provide Comprehensive Coverage or Collision Coverage, we will automatically provide these coverages for the newly acquired vehicle subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under J.2. will apply for up to 30 days after the date you or any family member becomes the owner of the newly acquired vehicle. If you wish to continue coverage for the newly acquired vehicle beyond this 30-day period, you must request it during this 30-day period, and we must agree to provide the coverage you request for this vehicle. If you request coverage after this 30-day period, any coverage that we agree to provide will be effective at the date and time of your request unless we agree to an earlier date.

K. "Occupying" means in, on, getting into or out of.

L. "Property damage" (referred to as PD).

1. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

a. Stored as or on;

b. Created or used on; or

c. Transmitted to or from;

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M. "Trailer" means a vehicle designed to be pulled by a private passenger auto, pickup, van or miscellaneous vehicle. It also means a farm wagon or implement while towed by such vehicles.

N. "Van" means a four-wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

O. "Your covered auto" means:

1. Any vehicle shown on the Declarations.

2. Any newly acquired vehicle.

3. Any trailer you own.

## PART A – LIABILITY COVERAGE

### DEFINITIONS

"Covered person" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto or trailer.

2. Any person using your covered auto.

3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom

coverage is afforded in 1. or 2. above. With respect to an auto or trailer other than your covered auto, this provision only applies if the other person or organization does not own or hire the auto or trailer.

The following are not covered persons under Part A:

1. The United States of America or any of its agencies.

901119caf66997b

3495-02-93-0000 (03-10 10-12-2013)
USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

2. Any person with respect to BI or PD resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the BI or PD.

## INSURING AGREEMENT

We will pay compensatory damages for BI or PD for which any **covered person** becomes legally liable because of an auto accident. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. **Our** duty to settle or defend ends when **our** limit of liability for these coverages has been paid or tendered. **We** have no duty to defend any suit or settle any claim for BI or PD not covered under this policy.

## LIMIT OF LIABILITY

For BI sustained by any one person in any one auto accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for BI Liability.

Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for BI Liability is **our** maximum limit of liability for all damages for BI resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for PD Liability is **our** maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most **we** will pay regardless of the number of:

1. **Covered persons**;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, **our** limit of liability will be the minimum required by the state's financial responsibility law.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over **our** limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the **covered person** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit **we** defend, on that part of a judgment that does not exceed **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment that does not exceed **our** limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

5. The amount a **covered person** must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or van which occurs while the vehicle is in the care, custody, or control of a **covered person**. The most **we** will pay is an amount equal to one month of the basic salary of the **covered person** at the time of a loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at **our** request.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

7. All defense costs we incur.

## EXCLUSIONS

A. We do not provide Liability Coverage for any covered person:

1. Who intentionally acts or directs to cause BI or PD, or who acts or directs to cause with reasonable expectation of causing BI or PD.

2. For PD to property owned or being transported by a covered person.

3. For PD to property rented to, used by, or in the care of any covered person. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For BI to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

   a. A share-the-expense car pool; or

   b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the auto business. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of your covered auto by you, any family member, or any partner, agent, or employee of you or any family member.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the auto business, farming, or ranching. This exclusion (A.7.) does not apply:

   a. To the maintenance or use of a private passenger auto; a pickup or van owned by you or any family member; or a trailer used with these vehicles; or

   b. To the maintenance or use of a pickup or van not owned by you or any family member if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For BI or PD for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For BI or PD occurring while your covered auto is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For BI sustained as a result of exposure to fungi, wet or dry rot, or bacteria.

13. For BI to a relative who resides primarily in that covered person's household.

B. We do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not your covered auto unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A miscellaneous vehicle; or

   d. A vehicle used in the business of farming or ranching.

)901119caf66997b

3495-02-b1-0008  USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART A Cont'd.)

2. Any vehicle, other than **your** covered auto:

   a. That has fewer than four wheels; or

   b. That is designed mainly for use off public roads.

   This exclusion (B.2.) does not apply while the vehicle is being used in a medical emergency.

3. Any vehicle, other than **your** covered auto, that is owned by **you**, or furnished or available for **your** regular use. This exclusion (B.3.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle, other than **your** covered auto, that is owned by or furnished or available for the regular use of, any **family member.** This exclusion (B.4.) does not apply:

   a. To **your** maintenance or use of such vehicle; or

   b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

5. Any vehicle while being operated in, or in practice for, any **driving contest or challenge.**

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

A. If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. With respect to a vehicle **you** or a **family member** does not own, any insurance **we** provide to a **covered person** shall be excess over:

   1. Any other applicable liability insurance; or

   2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

   However, with respect to a vehicle leased or rented by **you**, if **you** have agreed to provide primary coverage in a written lease or rental agreement, the coverage provided by this policy is primary, but only for the minimum limits required by the Florida Financial Responsibility law and the Florida Motor Vehicle No-Fault Law.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

# PART B-1 – PERSONAL INJURY PROTECTION COVERAGE
### (Referred to as PIP Coverage)

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member:**

   a. While occupying **your covered auto** within the United States or Canada;

   b. While occupying any **motor vehicle** within the State of Florida; or

   c. As a pedestrian, for BI caused by physical contact with a **motor vehicle** and resulting from an accident occurring within the State of Florida.

2. Any other person while occupying or when struck by **your covered auto** within the State of Florida. However, this (A.2.) does not apply if the person is:

   a. An **owner** of a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law; or

   b. An insured entitled to receive PIP benefits from the **motor vehicle owner's** insurer.

B. **"Emergency medical condition"** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

C. **"Entity wholly owned"** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395.

D. **"Family member"** as used in this Part means a relative of any degree by blood, marriage, or by adoption, who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

E. **"Medically necessary."**

1. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

5100FL(02) Rev. 10-12

Page 8 of 34

3195-02-b1-0008 ... USAA Confidential

·901119caf66997b

(PART B-1 Cont'd.)

2. **"Medically necessary"** does not include the following:

   a. Spinal ultrasound, also known as sonography, ultrasonography, and echography;

   b. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining bodily injury covered by personal injury protection benefits; and

   c. Dermatomal Evoked Potential.

F. **"Medical benefits"** means **reasonable fees** for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to F.1. below within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

   1. Initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III or chapter 401 which provides emergency transportation and treatment.

   2. Upon referral by a provided described in F.1., follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to F.1. which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician,

osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by any of the following persons or entities:

   a. A hospital or ambulatory surgical center licensed under chapter 395.

   b. An **entity wholly owned** by one or more physicians licensed under chapter 458 or 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

   c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

   d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in F.2.

   e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

      (1) Has a medical director licensed under chapter 485, chapter 459, or chapter 460;

      (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART B-1 Cont'd.)

(3) Provides at least four of the following medical specialties:

    (a) General medicine;

    (b) Radiography;

    (c) Orthopedic medicine;

    (d) Physical medicine;

    (e) Physical therapy;

    (f) Physical rehabilitation;

    (g) Prescribing or dispensing outpatient prescription medication;

    (h) Laboratory services.

3. Reimbursement for services and care provided in F.1. or F.2. up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person had an **emergency medical condition**.

4. Reimbursement for services and care provided in F.1. or F.2. is limited to $2,500 if any provider listed in F.1. or F.2. determines that the injured person did not have an **emergency medical condition**.

5. **Medical benefits** do not include massage as defined in s. 480.033 or acupuncture as defined in s. 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

G. "Motor vehicle."

1. **"Motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any **trailer** or semi-trailer designed for use with such vehicle.

2. **"Motor vehicle"** does not include a mobile home or any vehicle, other than a **motor vehicle** used in public school transportation:

    a. Which is used as mass transit and designed to transport more than five passengers exclusive of the operator of the vehicle; and

    b. Owned by a municipality, a transit authority, or a political subdivision of the state.

H. **"Owner"** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

1. A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement; and

2. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

3. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

I. **"Pedestrian"** means a person while not **occupying** any self-propelled vehicle.

J. **"Reasonable accessible"** means any location within the municipality where the **covered person** is receiving treatment, or in which the **covered person** resides, or within 10 miles by road of a **covered person's** residence, provided such location is within the county in which the **covered person** resides.

If there is no qualified physician to conduct the examination in a location **reasonably accessible** to the covered person, then such examination shall be conducted in an area of the closest proximity to the insured's residence.

)901119caf66997b

3495492-b1-8000070113311200110
USAA Confidential

2022CA-001788-0000-00      **Received in Polk 05/26/2022 04:01 PM**

(PART B-1 Cont'd.)

K. "Reasonable fee" is no more than 80 percent of the following schedule of maximum charges:

1. Two hundred (200) percent of Medicare for emergency transport and treatment by providers licensed under chapter 401.

2. Seventy-five (75) percent of the hospital's usual and customary charges for emergency services and care provided by a hospital licensed under chapter 395.

3. The usual and customary charges in the community for emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist.

4. Two hundred (200) percent of Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services for hospital inpatient services, other than emergency services and care.

5. Two hundred (200) percent of Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services for hospital outpatient services, other than emergency services and care.

6. For all other medical services, supplies and care, two hundred (200) percent of the allowable amount under:

   a. Medicare Part B, except as provided in 6.b and 6.c. below;

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories;

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment; or

   d. If such services, supplies or care are not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. ⁹⁹

For purposes of this definition (K.), the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services are rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the applicable schedule of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

L. "Replacement services expenses" means, with respect to the period of disability of the covered person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the covered person would have performed without income for the benefit of the covered person's household.

M. "Work loss" means, with respect to the period of disability of the covered person, 60 percent of gross income and earning capacity from inability to work proximately caused by the BI sustained by the covered person. However, "work loss" does not include any loss after death of a covered person.

N. "Your covered auto" as used in this Part does not include any miscellaneous vehicle or motorcycle for which security is not required under the Florida Motor Vehicle No-Fault Law.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART B-1 Cont'd.)

## INSURING AGREEMENT

A.  We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the covered person:

1.  Medical benefits; and

2.  Work loss; and

3.  Replacement services expenses; and

4.  Death benefits of $5,000. Death benefits are in addition to the medical benefits, work loss and replacement services expenses provided under the insurance policy.

These must be incurred as a result of BI (1) caused by an accident arising out of the ownership, maintenance, or use of a motor vehicle and (2) sustained by a covered person.

B.  We will not be liable for subsequent PIP benefits if a covered person unreasonably refuses to submit to an examination as required in Part E – General Provisions, Duties After an Accident or Loss.

C.  Whenever a person making a claim is charged with committing a felony, we shall withhold PIP benefits until 30 days after we receive notice that the prosecution, at the trial level, makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed, or the person is acquitted.

D.  We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be reasonable fees and reasonable expenses, but such additional charges are not covered.

E.  If the service provider sues the covered person because we refuse to pay expenses that we determine are unreasonable or unnecessary, we will settle or defend the suit, as we consider appropriate. We will pay defense costs and any resulting settlement or judgment against the covered person for reasonable and necessary expenses, subject to the limit of liability for this coverage. The covered person must cooperate with us in the defense of any claim or lawsuit. We will also pay a covered person up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

F.  We may utilize Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies or care if the coding policy or payment methodology does not constitute a utilization limit.

## LIMIT OF LIABILITY

A.  Regardless of the number of covered persons, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident, the total aggregate limit of PIP benefits available under Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains BI as the result of one accident shall not exceed the amount indicated on the Declarations.

B.  Any amount payable under PIP Coverage shall be reduced by the amount of benefits a covered person has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any state or the Federal Government.

5100FL(02) Rev. 10-12

Page 12 of 34

901119caf66997b



USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

**(PART B-1 Cont'd.)**

C. We will reserve $5,000 of PIP benefits for payment to physicians licensed under chapter 458 or chapter 459 or dentists licensed under chapter 466 who provide emergency services and care, as defined in s. 395.002, or who provide hospital inpatient care. The amount held in reserve will be used only to pay claims from such physicians or dentists until 30 days after the date we receive notice of the accident. After the 30-day period, any amount of the reserve for which we have not received notice of such claims may be used to pay other PIP benefits for loss or expense incurred because of the accident.

## APPLICATION OF DEDUCTIBLE

The amount of any deductible stated on the Declarations, incurred by or on behalf of each person to whom the deductible applies and who sustains BI as a result of any one accident, shall be deducted from 100% of the **medical benefits, work loss, and replacement services expenses** described in F.S. s. 627.736(1) before the application of any percentage limitation that may result because of the lack of Medical Payments benefits coverage. Such deductible shall not apply to:

1. The death benefit; or

2. Any person determined eligible pursuant to the Florida Crime Compensation Act, excluding s. 960.28 of the act.

## EXCLUSIONS

A. We do not provide PIP Coverage for BI sustained by any **covered person**:

1. While **occupying** a motor vehicle you own that is not **your covered auto** under this Part;

2. While **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (A.2.)

does not apply to **you**.

3. While operating **your covered auto** without expressed or implied consent;

4. If that **covered person** intentionally caused the BI;

5. While committing a felony;

6. For **work loss** if an entry on the Declarations indicates such coverage does not apply; or

7. While **occupying a motor vehicle** located for use as a residence or premises.

B. We will not pay benefits under PIP Coverage for services, supplies or care that is not reimbursable under Medicare or Florida workers' compensation law.

C. We will not pay benefits under PIP Coverage for any person:

1. Entitled to PIP benefits from:

   a. The owner of a **motor vehicle** other than **you**; or

   b. That owner's insurer.

2. Who owns an uninsured motor vehicle subject to the Florida Motor Vehicle No-Fault Law, as amended.

## OTHER INSURANCE

A. If there is other applicable PIP Coverage, we will pay only our share of the loss and of expenses incurred in processing the claim. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

B. If a **covered person** is injured while **occupying**, or when struck by, a motor vehicle rented or leased under a rental or lease agreement, PIP Coverage under the lessor's policy will be primary unless a statement in bold type on the face of the rental or lease agreement, specifies that PIP Coverage afforded under the lessor's policy shall be excess.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

## PART B-2 – MEDICAL PAYMENTS COVERAGE

### DEFINITIONS

A. "Covered person" as used in this Part means:

1. You or any **family member** while occupying any auto.

2. Any other person while occupying **your covered auto**.

3. You or any **family member** while not occupying a motor vehicle if injured by:

    a. A motor vehicle designed for use mainly on public roads;

    b. A **miscellaneous vehicle**; or

    c. A **trailer**.

B. "Medical payment fee" is an amount, as determined by **us** or someone on our behalf, that we will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services**. The amount that we will pay will be one of the following:

1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3. The amount negotiated with the provider; or

4. The lesser of the following:

    a. The actual amount billed; or

    b. A reasonable fee for the service provided.

C. "Medically necessary and appropriate medical services" are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by **us** or someone on our behalf, are required to identify or treat BI caused by an auto accident and sustained by a **covered person** and that are:

1. Consistent with the symptoms, diagnosis, and treatment of the **covered person's** injury and appropriately documented in the **covered person's** medical records;

2. Provided in accordance with recognized standards of care for the **covered person's** injury at the time the charge is incurred;

3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4. Not primarily for the convenience of the **covered person**, his or her physician, hospital, or other health care provider;

5. The most appropriate supply or level of service that can be safely provided to the **covered person**; and

6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, "**medically necessary and appropriate medical services**" do not include the following:

1. Nutritional supplements or over-the-counter drugs;

0901119caf66997b

3495-02-01-000

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART B-2 Cont'd.)

2. Experimental services or supplies, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed;

3. Inpatient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient;

4. Spinal ultrasound, also known as sonography, ultrasonography and echography;

5. Surface EMG;

6. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining BI covered by Medical Payments Coverage; and

7. Dermatomal Evoked Potential.

INSURING AGREEMENT

A. We will pay only the medical payment fee for medically necessary and appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:

1. Result from BI sustained by a covered person in an auto accident; and

2. Be incurred for services rendered within three years from the date of the auto accident.

B. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are medical payment fees for medically necessary and appropriate medical services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be medical payment fees and reasonable expenses, but such additional charges are not covered.

For purposes of this Part, we shall not be considered to have been furnished with notice of the amount of a covered loss or medical bills due unless the statements or bills are properly completed in their entirety, with all relevant information being provided.

1. All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to us on a properly completed:

a. Centers for Medicare and Medicaid Services (CMS) 1500 form; or

b. UB 92 form.

2. For purposes of this Part, "properly completed" means that the billing shall, to the extent applicable, use the following in effect for the year in which services are rendered:

a. The Physicians' Current Procedural Terminology (CPT);

b. Healthcare Correct Procedural Coding System (HCPCS); and

c. ICD-9.

3. In addition to the references shown in B.2.a. through B.2.c. above, we, or someone on our behalf, may seek guidance from one or more of the following to determine whether a form is "properly completed":

a. The Office of the Inspector General (OIG);

b. Physicians Compliance Guidelines; and

c. Other authoritative treatises designated by rule by the Agency for Health Care Administration.

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART B-2 Cont'd.)

4. All providers, other than hospitals, shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

5. No statement of medical services may include charges for medical services performed by a person or entity unless that person or entity possesses the valid licenses required to perform such services.

C. If the service provider sues the covered person because we refuse to pay expenses that we determine are unreasonable or unnecessary, we will settle or defend the suit, as we consider appropriate. We will pay defense costs and any resulting settlement or judgment against the covered person for reasonable and necessary expenses, subject to the limit of liability for this coverage. The covered person must cooperate with us in the defense of any claim or lawsuit. We will also pay a covered person up to $250 a day for loss of wages because of attendance at hearings or trials at our request.

D. We will not be liable for pending or subsequent benefits if a covered person or assignee of benefits under Medical Payments Coverage refuses to submit to an examination as required in Part E – General Provisions, Duties After an Accident or Loss.

## LIMIT OF LIABILITY

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each covered person injured in any one accident. This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

## EXCLUSIONS

We do not provide benefits under this Part for any covered person for BI:

1. Sustained while occupying any vehicle that is not your covered auto unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A miscellaneous vehicle; or

   d. A vehicle used in the business of farming or ranching.

2. Sustained while occupying your covered auto when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. Your covered auto used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while occupying any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by you.

6. Sustained while occupying, or when struck by, any vehicle, other than your covered auto, that is owned by any family member. This exclusion (6.) does not apply to you.

7. Sustained while occupying a vehicle without expressed or implied permission.

5100FL(02) Rev. 10-12

i901119caf66997b    4495-02-b1-0008 XXXXXXXXXXXXX USAA Confidential

2022CA-001788-0000-00    Received in Polk 05/26/2022 04:01 PM

(PART B-2 Cont'd.)

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to **BI** sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge**.

12. Sustained as a result of a **covered person's** exposure to **fungi**, wet or dry rot, or bacteria.

OTHER INSURANCE

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

SPECIAL PROVISIONS

A. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E – General Provisions, then coverage under Part B-2 – Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

B. Payment under Part B-2 – Medical Payments Coverage shall be applied to that portion of any claim for PIP medical expenses that is otherwise covered but not payable under PIP Coverage due to the limitation of 80% of medical expenses, regardless of whether the full amount of PIP benefits have been exhausted. However, Medical Payments Coverage shall not be payable for the amount of any deductible which has been selected under PIP Coverage.

# PART C – UNINSURED MOTORISTS COVERAGE
(referred to as UM Coverage)

UM Coverage includes underinsured motorists coverage.

DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies.

B. **"Uninsured Motor Vehicle."**

1. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

a. To which no liability bond or policy applies at the time of the accident.

b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00         Received in Polk 05/26/2022 04:01 PM

(PART C Cont'd.)

c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in BI without hitting:

(1) You or any **family member**;

(2) A vehicle **you** or any **family member** is **occupying**; or

(3) **Your covered auto**.

d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent within 4 years after the accident.

2. **"Uninsured motor vehicle"** does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of **you** or any **family member**. This exclusion (2.a) does not apply:

(1) If the vehicle or equipment is **your covered auto** to which Part A of this policy applies; and

(2) Liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member**.

b. Operated on rails or crawler treads, except for a snowmobile.

c. Designed mainly for use off public roads while not on public roads.

d. While located for use as a residence or premises.

## INSURING AGREEMENT

A. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI sustained by a **covered person** and caused by an auto accident. However, **we** will not pay damages for pain, suffering, mental anguish, or inconvenience unless the BI consists in whole or in part of:

1. Significant and permanent loss of an important bodily function;

2. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

3. Significant and permanent scarring or disfigurement; or

4. Death.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

## LIMIT OF LIABILITY (STACKED)

A. Accidents involving BI to **you** or any **family member**.

1. For BI sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage. Subject to this limit for "each person," **our** maximum limit of liability for all damages for BI resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

)901119caf66997b



USAA Confidential

2022CA-001788-0000-00          Received in Polk 05/26/2022 04:01 PM

(PART C Cont'd.)

2. Notwithstanding the maximum limits of liability for "each person" and "each accident" set forth in A.1. above, for BI sustained in any one accident by a **covered person** other than **you** or any **family member**, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the lesser of:

   a. The "each person" limit of liability for UM Coverage shown on the Declarations applicable to the vehicle that person was occupying at the time of the accident; or

   b. That **covered person's** pro-rata share of the "each accident" limit of liability for UM Coverage shown on the Declarations applicable to that vehicle.

   **You** or any **family member** who sustains BI in the accident will also be entitled to a pro-rata share of the "each accident" limit of liability applicable to that vehicle. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all **covered persons**.

3. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made; or

   c. Vehicles involved in the accident.

B. Accidents not involving BI to **you** or any **family member**.

1. For BI sustained by any one person in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

Subject to this limit for "each person", our maximum limit for all damages for BI resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage.

2. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made;

   c. Vehicles or premiums shown on the Declarations;

   d. Premiums paid; or

   e. Vehicles involved in the accident.

C. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid or payable because of the BI:

   1. Under any workers' compensation law, disability benefits law, or similar law; or

   2. Under any PIP Coverage, automobile medical expense coverage, or motor vehicle liability insurance.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid because of the BI by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

**EXCLUSIONS**

A. **We** do not provide UM Coverage for BI sustained by any **covered person**:

   1. If that person or legal representative settles the BI claim without **our** written consent. However, this exclusion (A.1.) does not apply:

      a. If such settlement does not prejudice **our** right to recover payment; or

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART C Cont'd.)

b. If that person or legal representative provides us with advance notice of any proposed settlement as required by Part E - General Provisions, Duties After an Accident or Loss.

2. While **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (A.2.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Using a vehicle without expressed or implied permission.

4. While **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

5. While **occupying** any vehicle when it is being operated in, or in practice for, any **driving contest or challenge.**

B. UM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation law or similar disability benefits law.

C. We do not provide UM Coverage for punitive or exemplary damages.

OTHER INSURANCE

If there is other applicable UM Coverage available under one or more policies or provisions of coverage:

1. Any insurance we provide with respect to a vehicle **you** do not own or to a person other than **you** or any **family member** will be excess over any collectible insurance.

2. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

NON-DUPLICATION

No covered **person** will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

1. Paid because of the BI by or on behalf of persons or organizations who may be legally responsible.

2. Paid or payable under any workers' compensation law or similar disability benefits law.

3. Paid under another provision or coverage in this policy.

4. Paid under any PIP Coverage or under any automobile medical expense coverage.

5100FL(02) Rev. 10-12

901119caf66997b

3893-02-b1-0000 USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

## PART D – PHYSICAL DAMAGE COVERAGE

### DEFINITIONS

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered **collision**: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, **you** may elect to have it considered a **loss** caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

1. Original manufacturer equipment, furnishings, or parts;

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

3. Equipment, furnishings, or parts designed to assist disabled persons;

4. Anti-theft devices and devices intended to monitor or record driving activity; and

5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or trailer not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

2. A nonowned vehicle does not include any of the following vehicles used in any business or occupation other than farming or ranching:

   a. A pickup;

   b. A van; or

   c. A miscellaneous vehicle.

F. **"Repair."**

1. **"Repair"** means restoring the damaged property to its pre-loss operational safety, function, and appearance. This may include the replacement of component parts.

2. **Repair** does not require:

   a. A return to the pre-loss market value of the property;

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

**2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM**

(PART D Cont'd.)

b. Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

c. Rekeying of locks following theft or misplacement of keys.

G. "Your covered auto," as used in this Part, includes:

1. Custom equipment, up to a maximum of $5,000, in or on your covered auto.

2. A nonowned vehicle. If there is a loss to a nonowned vehicle, we will provide the broadest coverage shown on the Declarations.

## INSURING AGREEMENT

A. Comprehensive Coverage (excluding collision).

1. Physical damage. We will pay for loss caused by other than collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown on the Declarations. However, we will pay for the cost of repairing or replacing the damaged windshield on your covered auto without a deductible.

2. Transportation expenses. We will also pay:

a. Up to $30 a day, to a maximum of $900, for transportation expenses incurred by you or any family member. This applies only in the event of a total theft of your covered auto. We will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when your covered auto is returned to use or, if not recovered or not repairable, up to seven days after we have made a settlement offer.

b. If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement for that vehicle.

B. Collision Coverage. We will pay for loss caused by collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown on the Declarations.

C. Rental Reimbursement Coverage (for loss other than total theft).

1. We will reimburse you for expenses you or any family member incurs to rent a substitute for your covered auto. This coverage applies only if:

a. Your covered auto is withdrawn from use for more than 24 hours due to a loss, other than a total theft, to that auto; and

b. The loss is covered under Comprehensive Coverage or caused by collision, and the cause of loss is not otherwise excluded under Part D of this policy.

2. We will reimburse you only for that period of time reasonably required to repair or replace your covered auto. If we determine your covered auto is a total loss, the rental period will end no later than seven days after we have made a settlement offer.

D. USAA Roadside Assistance. We will pay the reasonable costs you or any family member incurs for one of the following each time your covered auto is disabled:

1. Mechanical labor up to one hour at the place of breakdown.

2. Locksmith services to gain entry to your covered auto. This does not include the rekeying of locks following theft or misplacement of keys.

3493-024-1-0008  USAA Confidential

1901119caf66997b

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, we do not pay for the cost of these items.

## LIMIT OF LIABILITY

A. Total loss to your covered auto. Our limit of liability under Comprehensive Coverage and Collision Coverage is the actual cash value of the vehicle, inclusive of any custom equipment.

1. The maximum amount we will include for loss to custom equipment in or on your covered auto is $5,000.

2. We will declare your covered auto to be a total loss if, in our judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss.

B. Other than a total loss to your covered auto:

1. Our limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to repair the loss based on our estimate or an estimate that we approve, if submitted by you or a third party. Upon request, we will identify at least one facility that is willing and able to complete the repair for the amount of the estimate.

2. Our estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts which are at least equivalent in kind and quality to the damaged parts prior to the loss in terms of fit, appearance, and performance.

3. You may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. You will be responsible, however, for any cost

difference between the parts included in our estimate and the new OEM parts used in the repair.

4. We will not take a deduction for depreciation. We will take a deduction if prior damage has not been repaired. Prior damage does not include wear and tear.

C. Personal property contained in your covered auto. The limits of liability described below are separate from the limits available for a loss to your covered auto:

1. Our limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

a. The amount necessary to replace the damaged or stolen property; or

b. $250.

2. We will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, our maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, our limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to you or to the address shown on the Declarations. If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the damaged or stolen property and pay you an agreed or appraised value for it. We cannot be required to assume the ownership of damaged property. We may settle a claim either with you or with the owner of the property.

5100FL(02) Rev. 10-12

Page 23 of 34

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

## LOSS PAYABLE CLAUSE

Loss or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the loss results from **your** conversion, secretion, or embezzlement of **your covered auto**. We may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown on the Declarations. We may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that we not send notices, including a notice of cancellation, we will abide by that request. When we pay the loss payee we will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

We will not apply the deductible to loss caused by **collision** with another vehicle if all of these conditions are met:

1. The loss to **your covered auto** is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of **your covered auto** is not legally responsible, in any way, for causing or contributing to the **loss**.

## EXCLUSIONS

We will not pay for:

1. Loss to **your covered auto** which occurs while it is being used to carry persons for a fee. This exclusion (1.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

   a. Road damage to tires;

   b. Wear and tear;

   c. Freezing; or

   d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. We will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

   This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3. **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. **Loss** to a camper body or trailer owned by **you** or any **family member** which is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family member** becomes the owner.

5. **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

901119caf66997b



USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART D Cont'd.)

6. **Loss** to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. **Loss** to any **nonowned vehicle** arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8. **Loss** to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. **Loss** to any vehicle while it is being operated in, or in practice for, any **driving contest or challenge.**

10. **Loss** resulting from:

    a. The acquisition of a stolen vehicle;

    b. Any legal or governmental action to return a vehicle to its legal owner; or

    c. Any confiscation or seizure of a vehicle by governmental authorities.

    This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. **Loss** resulting from use in any illicit or prohibited trade or transportation.

12. Any **loss** arising out of any act committed:

    a. By or at the direction of **you** or any **family member**; and

    b. With the intent to cause a **loss.**

13. **Loss** caused by **fungi**, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of **fungi**, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

5100FL(02) Rev. 10-12

## MANDATORY PRE-INSURANCE INSPECTION

A. **We** have the right to inspect any private passenger motor vehicle which **you** insure or intend to insure for Physical Damage Coverage under this policy. This right applies only in accordance with Florida Statute 627.744.

B. When **we** require an inspection, **you** must cooperate and make the vehicle available for the inspection.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **nonowned vehicle**.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the **loss**.

This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

Page 25 of 34

901119caf66997b

USAA Confidential

## PART E - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the **covered person**, as defined in this policy, shall not relieve **us** of any obligations under this policy.

### CHANGES

A. The premium is based on information **we** have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or is incorrect or incomplete, **we** may adjust **your** premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, **we** will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. **You** agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

1. Change in location where any vehicle is garaged.

2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

6. Addition or deletion of an operator.

7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

1. If, because of **your** active-duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your** covered auto and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

3495-02-11-0000 00 000 00 000 00  USAA Confidential

)901119caf66997b

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date you returned from deployment. If you wish to continue the reinstated coverage beyond the 60-day period, you must request it during the 60-day period. If you request reinstated coverage after this 60-day period, any coverage we agree to provide will be effective at the date and time of your request unless we agree to an earlier date.

3. You must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if you return from deployment on furlough or emergency leave for a period of 30 days or less, we will waive any increase in the premium for the period of time you are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs we will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and you must pay an additional premium for that coverage.

## CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

## DUTIES AFTER AN ACCIDENT OR LOSS

We will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A - Liability must:

1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with a suit, accident, or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize us to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person or entity seeking coverage under Part B-1 - PIP Coverage or Part B-2 - Medical Payments Coverage.

1. As soon as practicable, give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

2. Submit as often as we reasonably require, to examination under oath. The examination must be signed.

3. Submit to mental examinations by physicians we select at our expense when and as often as we may reasonably require. Mental exams or physical exams as required by us in B.3.a. above will be scheduled in a location reasonably accessible to such person, and a copy of the medical report shall be forwarded to such person if requested. Reasonably accessible means any location:

   a. Within the municipality where such person is receiving treatment or in which that person resides; or

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

b. Within 10 miles by road of such person's residence, provided such location is within the county in which that person resides.

If there is no qualified physician to conduct the examination in a location reasonably accessible to such person, then the examination shall be conducted in an area of the closest proximity to that person's residence.

D. A person seeking coverage under Part C – UM Coverage must also comply with the following:

1. If the **covered person** and the owner or operator of the **uninsured motor vehicle** reach a settlement agreement that would exhaust the owner's or operator's limits of liability, the **covered person** must submit the agreement to **us** in writing for **our** approval prior to final execution of the settlement agreement. This applies only if:

   a. The settlement would not fully satisfy the **covered person's** claim for BI; and

   b. A claim for UM Coverage has been or will be made against **us**.

2. The **covered person** may file suit against **us** and the owner or operator of the **uninsured motor vehicle** if, within 30 days after **our** receipt of the settlement agreement, **we** do not:

   a. Approve the settlement;

   b. Waive **our** rights of recovery against the owner or operator of the **uninsured motor vehicle**;

   c. Authorize the signing of a full release; and

   d. Agree to arbitrate the claim for UM Coverage.

The suit shall decide if the **covered person** is legally entitled to collect damages and, if so, the amount.

E. A person seeking coverage under Part D – Physical Damage Coverage must also:

1. Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** is stolen.

3. Permit **us** to inspect and appraise the damaged property before its repair or disposal.

**LEGAL ACTION AGAINST US**

A. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy.

1. In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

2. In addition, under Part B–1 – PIP Coverage and Part B–2 – Medical Payments Coverage, if **we** fail to deny or pay a claim within 30 days of receiving adequate proof of that claim, the **covered person** shall not file suit for those benefits until providing **us** with a written demand for payment and giving **us** 30 days in which to respond to that demand. Any written demand for payment must include an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefits claimed to be due.

B. No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

901119caf66997b



(PART E Cont'd.)

C. Unless we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction in the county and state where the covered person lived at the time of the accident.

## MEDIATION

We or the covered person may request mediation of any claim for BI in an amount of $10,000 or less or a claim for PD in any amount arising out of the ownership, operation, use, or maintenance of a motor vehicle prior to the institution of litigation.

Such request shall be filed with the Florida Department of Financial Services on a form approved by the department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation.

The filing of a request for mediation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the mediation process or the time prescribed in the Limitation of Actions, whichever is later.

## MISREPRESENTATION

We do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, we will pay for each element of loss only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejudice them. However, our rights in this paragraph do not apply:

1. Under Part C – UM Coverage, with respect to payments made because of the BI resulting from an accident with an uninsured motor vehicle, as defined in Definition 1.b. of that Part, if we:

a. Have been given prompt written notice of a tentative settlement between a covered person, as defined in Part C, and the insurer of an uninsured motor vehicle; and

b. Fail to advance payment to such person in an amount equal to the tentative settlement within 30 days after receipt of notification.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

If we advance payment to the covered person in an amount equal to the tentative settlement within 30 days after receipt of notification, that payment will be separate from any amount the covered person is entitled to recover under the provisions of Part C – UM Coverage. However, we shall have a right to recover such advance payment.

2. Under Part D, against any person using your covered auto with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for us the proceeds of the recovery and reimburse us to the extent of our payment.

C. If the covered person, as defined in this policy, recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

D. If we make payment for a claim under Part A, and the covered person, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2. Failed or refused to comply with the duties specified in this policy and prejudiced our defense of the liability claim by such failure or refusal;

then, the covered person shall reimburse us to the extent of our payment and cost of defense.

E. If we make payment for a claim under Part D and you or any family member has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then you shall reimburse us to the extent of our payment.

## OWNERSHIP

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of your covered auto between any ports of these locations.

However, PIP benefits under Part B–1 – PIP Coverage apply only to accidents occurring within the State of Florida with respect to any covered person, as defined in Part B–1 – PIP Coverage, other than you or any family member.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy, except PIP Coverage, are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if you have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for BI or PD is brought in the USA.

)901119caf66997b



USAA Confidential

**2022CA-001788-0000-00     Received in Polk 05/26/2022 04:01 PM**

(PART E Cont'd.)

3. Coverage under this policy does not extend:

a. To any **covered person**, as defined in this policy, who does not live in the USA.

b. To any **covered person**, as defined in this policy, **occupying** a vehicle which is not principally garaged and used in the USA.

c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance **we** provide will be excess over any other similar valid and collectible insurance.

## REDUCING THE RISK OF LOSS AND OTHER BENEFITS

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items. **We** may also occasionally provide **you** with items, offers or services **we** think may benefit **you** or **your family members**. Such items, offers and services may be provided in any form **we** choose.

## SPOUSE ACCESS

A. The named insured and **we** agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. **You** may not cancel a new or renewal policy providing PIP Coverage or Property Damage Liability Coverage during the first 60 days this policy is in effect unless:

a. **Your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

b. Ownership of **your covered auto** is transferred; or

c. Another policy is purchased to replace the policy being cancelled; or

d. **You** are a member of the United States Armed Forces and are called to or on active duty outside the United States in an emergency situation.

2. **You** may cancel this policy for any reason after this policy is in effect for 60 days, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

3. **We** may cancel this policy by mailing a notice to the named insured shown on the Declarations at the most recent address **you** provided to **us** by giving:

a. At least ten days notice if cancellation is for nonpayment of premium; or

b. At least 45 days notice in all other cases.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

4. If this is a new policy providing PIP Coverage and Property Damage Liability Coverage, we will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

5. After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   a. For nonpayment of premium; or

   b. For material misrepresentation or fraud; or

   c. If your driver's license, or that of any driver who lives with you or customarily uses your covered auto, has been suspended or revoked. This must have occurred:

      (1) During the policy period or during the 180 days immediately preceding its effective date; or

      (2) If the policy is a renewal, during its policy period.

6. If this policy is issued to meet the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security, the following special provisions apply and supersede any contrary provisions in the policy:

   a. You may not cancel this policy for any reason.

   b. Effective when our underwriting is completed or 30 days from the effective date of the policy, whichever comes first:

      (1) We may not cancel this policy for any reason.

      (2) No refund of premium will be allowed.

(3) This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk vehicle, adding vehicles, adding new drivers or moving to a different rating territory.

(4) If there is a material change in the policy, you must obtain a new six-month non-cancellable policy. If you obtain the policy from us, we will give you a credit on the new policy for any unearned premium paid on the previously issued policy.

7. We may cancel for any other reason not prohibited by law.

B. Nonrenewal. If we decide not to renew this policy, we will mail notice by registered or certified mail or United States Post Office certificate of mailing to the named insured shown on the Declarations at the most recent address you provided to us. Notice will be mailed at least 45 days before the end of the policy period.

C. Automatic Termination.

1. If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that you have not accepted our offer.

2. If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Mailing of any notice by registered or certified mail or United States Post Office proof of mailing of any notice will be sufficient proof of notice.

901119caf66997b



USAA Confidential

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

(PART E Cont'd.)

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if the named insured shown on the Declarations dies, we will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy we issued to you apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM Coverage.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

5100FL(02) Rev. 10-12

901119caf66997b

USAA Confidential

2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM

THIS PAGE INTENTIONALLY LEFT BLANK

Page 34 of 34

3495-02-61-00X  USAA Confidential

901119caf66997b

**2022CA-001788-0000-00      Received in Polk 05/26/2022 04:01 PM**

# EXHIBIT "B"

8


**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number: **615900**

Filing Accepted: **3/14/2022**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **POPE CHERRY** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FL  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **POPE LENWOOD** |
| Policy #: | ███████████ |
| Claim #: | ███████████ |

### Attorney

| | |
|---|---|
| Name: | **JOHN DISTASIO** |
| Street Address: | **407 N HOWARD AVENUE, SUITE 100** |
| City, State Zip: | **TAMPA, FLORIDA  33606** |
| Email Address: | **JOHN@FLORIDALAWGROUP.ORG** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **USAA GENERAL INDEMNITY COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**STEVEN COBB**

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 10/14/2008

**2022CA-001788-0000-00       Received in Polk 05/26/2022 04:01 PM**



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number: **615900**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**     **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**"We will pay compensatory damages which a covered person in legally entitled to recover from the owner or operator of an uninsured motor vehicle because of BI sustained by a covered person and caused by an auto accident."**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**On July 21, 2018, Cherry Pope was a seat belted passenger in an automobile that was struck from behind on South Florida Avenue in Polk County, Florida. The at-fault driver admitted to striking Ms. Pope's vehicle from behind, according to Officery Suttle's crash report, # 87796806. Ms. Pope sustained injuries, permanent in nature, to her C-Spine and Lumbar Spine. Most notably, Ms. Pope's Lumber spine contained injuries of L4 on L5. Developing bilateral rusterolateral disc herniation with annular tear AND L5-S I level: Slight postcrolisthcsis of 1.5 on SI. Disc herniation. These injuries were different in kind than any previous injury to this area of her body. She also experienced emotional distress, anxiety, pain and suffering. Ms. Pope sustained over $43,000 in medical treatment. She has been out of work since July 2021 on disability. All requisite paperwork has been provided to USAA. USAA claim adjuster Steven Cobb was presented with a demand to settle the UM claim for $61,000 based on her medical bills alone, on or about the week of March 7, 2022. Mr. Cobb counteroffered at $35,000, via phone, shortly thereafter. Plaintiff's counsel subsequently discovered that Ms. Pope was out of work on disability due to the car crash and increased Ms. Pope's offer to $100,000 in light of the new evidence. Mr. Cobb requested the paperwork to reflect the wage loss claim. On March 11, 2022, Plaintiff's counsel sent Ms. Pope's Cigna check and Dr. Dawson's records, indicating that Ms. Pope would be unable to return to work. The paperwork reflected Ms. Pope's loss of income and Dr. Dawson's medical notes, which explain the injuries as a cause of Ms. Pope's inability to work. Please specifically review pages 3, 7, and 13 of Dr. Dawson's evaluation, outlining her lumbar and motor vehicle accident. When the additional paperwork was submitted to Mr. Cobb, Plaintiff's counsel wrote via email, "When you have finished reviewing, please reach out to me to get her UM claim settled at a fair number. I am willing to meet in the middle on this, so let's get this done." In an act of continued retaliation, Mr. Cobb moves his offer down to $20,000. Ms. Pope produced more evidence of wage loss and was unjustly penalized by her own insurance company, USAA. The offer made by USAA, which was significantly less than Ms. Pope's out-of-pocket medical expenses, did not take into consideration her pain and suffering, future medicals, nor wage claim which her medical records and reports show she will need. I am requesting that USAA fairly settle this claim and not unnecessarily punish Ms. Pope for a car accident that wasn't her fault.**

### Comments

DFS-10-363
Rev. 10/14/2008

**User Id**                    **Date Added**              **Comment**

DFS-10-363
Rev. 10/14/2008

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

CHERRY POPE,

      Plaintiff,

v.                                                          CASE NO.: 2022-CA-001788

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

_____/

## PLAINTIFF'S INTERROGATORIES TO DEFENDANT
## USAA GENERAL INDEMNITY COMPANY

    The Plaintiff, CHERRY POPE, by and through the undersigned counsel, pursuant to Rule 1.340 of Florida Rules of Civil Procedure, hereby files her notice of serving Interrogatories to Defendant, USAA GENERAL INDEMNITY COMPANY, and requests the Defendant respectively respond to said Interrogatories under oath within forty-five (45) days.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing has been furnished by Florida E-Portal/Electronic Mail to on this 26th day of May 2022.

                                    **/s/ John C. Distasio, Esq.**
                                      John C. Distasio, Esquire
                                      Florida Bar No. 096328
                                      The Florida Law Group
                                      407 N Howard Ave #100
                                      Tampa, FL 33606
                                      john@floridalawgroup.org
                                      michele@floridalawgroup.org
                                      (813) 463-8880 Telephone
                                      (844) 444-1154 Facsimile
                                      *Attorney for Plaintiff*

0901119cb1c11b9a

USAA Confidential

## PLAINTIFF'S, FIRST SET OF INTERROGATORIES TO
## DEFENDANT, USAA GENERAL INDEMNITY COMPANY

(If answering for another person or entity, answer with respect to that person or entity, unless otherwise stated).

1.     What is your name and address, and if you are answering for someone else, your official position?

2.     Please state your:

        a.  Correct legal name:
        b.  Whether or not you are incorporated, and if so, where and when:
        c.  Your main business office address:
        d.  Your local business office address:

3.     If you, your attorney, or other agents, employees or representative has at any time obtained a written or oral statement, or statements, concerning the events described In the complaint from any person, please answer the following.

        a.  The name and present or last known address of any person or persons from whom such statements were obtained.
        b.  The names and present address or last known address of each person or persons taking such statement or statements.
        c.  The date or dates such statement or statements were taken.
        d.  Whether the statement or statements contained facts concerning the matter, place, time or cause of the happening of the event described in the complaint.
        e.  The present whereabouts of said statement or statements and the names and present address or last known address of the person or persons in whose possession or custody said statements are retained.

4.     If you, your attorney, or other agents, employees or representative has at any time obtained from plaintiff a statement concerning the events described in the complaint, and if so, also state the following:

0901119cb1c11b9a

USAA Confidential

    a.  The name and present or last known address of the person or persons taking such statement or statements:

    b.  Where and when such statement or statements were obtained:

    c.  Where and in whose possession such statement or statements are now retained:

5.    List the names and addresses of all persons believed or known by you, your agents or attorneys, to have any knowledge concerning any of the issues raised by the pleadings and specify the subject matter about which the witnesses have knowledge.

6.    If you do not admit liability for damages, please describe as fully as you are able the facts that support such a denial of liability.

7.    If you intend to call any non-medical expert witnesses at the trial of this case, please identify each witness; describe his/her qualifications as an expert; state the subject matter upon which he/she is expected to testify; state the substance of the facts and opinions to which he/she is expected to testify; and give a summary of the grounds for each opinion given by the claimed expert.

8.    Concerning your affirmative defenses, as to each such defense, state each fact you contend which supports each affirmative defense, list the names, business and residence telephone numbers of each person whom you intend to call as a witness to establish each such claimed fact, describe all physical and documentary evidence and the contents thereof you contend supports your assertions, and the names address and phone numbers of the custodians of each such physical and documentary evidence.

0901119cb1c11b9a             USAA Confidential

## **<u>VERIFICATION</u>**

_____
**USAA GENERA INDEMNITY COMPANY**

STATE OF FLORIDA_____)

COUNTY OF _____)

      BEFORE    ME,    the    undersigned    authority,    personally    appeared,
_____, who is personally known to me or who has produced
_____ as identification, and being duly sworn, on oath, deposes and
says that the foregoing Answers to Interrogatories are true and correct to the best of his/her
knowledge, and that he/she has read the foregoing Answers to Interrogatories and knows the
contents thereof.

SWORN TO AND SUBSCRIBED before me this ____ day of _____, 2022.

                                      _____
                                        Notary Public (signature)

                                      _____
                                        (Printed)

**MY COMMISSION EXPIRES:**

      **(SEAL)**

4

0901119cb1c11b9a

Filing # 150395814 E-Filed 05/26/2022 03:35:25 PM

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION**

CHERRY POPE,

      Plaintiff,

v.                                                          CASE NO.: 2022-CA-001788

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

_____/

**PLAINTIFF CHERRY POPE'S REQUEST FOR PRODUCTION TO DEFENDANT
USAA GENERAL INDEMNITY COMPANY**

**COMES NOW** the Plaintiff, CHERRY POPE, by and through the undersigned attorneys, and pursuant to Florida Rule of Civil Procedure 1.350, requests that the Defendant, USAA GENERAL INDEMNITY COMPANY, produce to Plaintiff for examination, inspection and copying, the items listed below at The Florida Law Group, 407 North Howard Avenue, Suite 100, Tampa, Florida 33606, no later than forty-five (45) days from the date of service hereof.

**DEFINITIONS**

    a.    "You" or "your" refers to Defendant(s) herein and to all other persons acting or purporting to act on behalf of Defendant(s), including agents and employees.

    b.    "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, telexes, advertisements, facsimiles, e-mail, or other forms of verbal and/or communicative intercourse.

    c.    "Documents" shall mean all written or graphic matter of every kind or description, however, produced or reproduced, whether draft or final, original or reproduction

0901119cb1c11b9a

USAA Confidential

signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or

executed, including but not limited to: written communications, letters, correspondence,

facsimiles, e-mail, memoranda, minutes, notes, films, recordings, of any type, transcripts,

contracts, agreements, purchase or sales orders, memoranda of telephone conversations of

personal conversations, diaries, desk calendars, interoffice communications, reports, studies,

bills, receipts, checks, checkbooks, invoices, requisitions or material similar to any of the

foregoing however denominated, by whomever prepared, and to whomever addressed, which are

in your possession, custody or control or to which you have had or can obtain access.

        d.     "Electronically stored information" or "ESI" as used herein, means and refers to

computer generated information or data of any kind, stored in or on any storage media located on

computers, file servers, disks, tape or other real or virtualized devices or media, including but not

limited to digital communications (e.g., e-mail, voice mail, instant messaging, tweets, etc.), e-

mail server stores, spreadsheets and tables, accounting application data, image and facsimile

files, sound and video recordings, databases, contact and relationship management data, calendar

and diary application data, online access data, presentations, animations, network access and

server activity logs, project management application data, computer aided design/drawing files,

and backup and archival files.

        e.     "Identify" when used with respect to an individual, means to state (1) their name;

(2) business affiliation and official title and/or position; and (3) their last known residential and

business address.

        f.     "Identify" when used with respect to a document, means to state (1) the type of

document (e.g. letter, memorandum, hand-written note, facsimile, e-mail); (2) its date of origin

or creation; (3) its author and addressee; (4) its last known custodian or locations; and (5) a brief

USAA Confidential

0901119cb1c11b9a

description of its subject matter and size. In lieu of identifying any document(s), you may attach a copy of it to your answer, indicating the question to which it is responsive.

       g.     "<u>Identify</u>" when used with respect to a company or other business entity, means to state, (1) the company's legal name, any former names, and the name under which it trades or does business (2) the address of its principal place of business; and (3) the identity of its chief executive officer.

       h.     "<u>Persons</u>" means an individual, corporation, partnership, trust, associations, company, organization, or any form of a business or commercial entity.

       i.     "<u>Relate to</u>" means consist of, refer to, reflect or be in any way logically connected with the matter discussed.

The period of time encompassed by these requests shall be from the date of the alleged accident to the date of answering, unless otherwise indicated. Note, this request is continuing up to and at the time of trial.

For purposes of the Rule, a "<u>Statement</u>" includes:

      (1) A written statement, signed or otherwise adopted or approved by the person making it, or

      (2) A stenographic, mechanical, electronic, videographic or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

## <u>DOCUMENTS TO BE PRODUCED</u>

1. All photographs, slides, movie film, videotape and/or any other recorded or other document depicting the scene of the accident, which is the subject matter of the complaint in this action.

0901119cb1c11b9a

USAA Confidential

2. Any and all witness statements made regarding the incident which is the subject matter of the complaint in this action. If you object to the production of such, please give the name of the person giving the statement, the date of the statement was taken, recorded or memorialized, the person who wrote, memorialized or recorded the statement, the substance of each statement and the current custodian of such statement.

3. A copy of any and all policies of insurance providing coverage to the plaintiff for the incident, which is the subject matter of the complaint in this action.

4. Any and all incident reports regarding the crash, which is the subject matter of the complaint in this action.

5. Any and all policies of insurance that afford coverage for any matters related to this cause of action.

6. Any and all bills, invoices or similar documents, or estimates relating to damage to all of the vehicles involved in this cause of action.

7. Any photographs taken for use in this litigation.\

8. Any and all written, transcribed, or audio/video recorded statements made or given by the Plaintiff.

9. Any and all opinions, reports, examination results, test results or analysis of any matters related to this cause of action, as prepared, presented or published by any experts retained by you or otherwise associated with this cause of action to testify at trial.

10. Any maps, plats, diagrams, blueprints, schematics, graphics, video tapes, drawings or similar such documents anticipated to by utilized at trial or relied upon by any witness expected to present testimony at the trial of this cause of action.

11. Any and all titles, certificates or similar such documents which establish, or otherwise indicate, the ownership of the vehicle involved in this cause of action.

12. Any and all documents, memoranda, notes, recorded materials, tapes, or similar such documents anticipated to be utilized by you at the trial of this cause of action and relating to your defense of the matters presented in the complaint.

13. Any and all tangible items that you contend support each of your Affirmative Defenses.

14. Any and all tangible items that you contend support each of your responses to Plaintiff's Request for Admissions.

USAA Confidential

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by Florida E-Portal/Electronic Mail on this _____26th_ day of May 2022.

<div align="center"></div>

*<u>John C, Distasio, Esq.</u>*
John Distasio, Esquire.
Florida Bar No. 096328
THE FLORIDA LAW GROUP
407 N. Howard Ave., Suite 100
Tampa, Florida 33606
service@floridalawgroup.org
(813) 463-8880 Telephone
(813) 283-2943 Facsimile

0901119cb1c11b9a

USAA Confidential

IN THE CIRCUIT COURT, TENTH
JUDICIAL CIRCUIT, IN AND FOR POLK
COUNTY, FLORIDA

CASE NO.:    2022-CA-001788

CHERRY POPE,

     Plaintiff,

vs.

USAA GENERAL INDEMNITY COMPANY,

     Defendant.

_____

### USAA'S MOTION TO DISMISS COUNT II (INSURANCE BAD FAITH) OF PLAINTIFF'S COMPLAINT

Defendant USAA GENERAL INDEMNITY COMPANY ("USAA") pursuant to Florida Rules of Civil Procedure 1.140(b)(6) and applicable Florida law, hereby requests this Court dismiss Count II of Plaintiff's Complaint and states as follows:

1. On or about May 26, 2022, CHERRY POPE ("Plaintiff") filed a four count complaint against USAA.

2. Count I of Plaintiff's Complaint sets forth a claim for Uninsured/Underinsured Motorist Benefits against USAA and Count II sets forth a cause of action against USAA for statutory bad faith pursuant to section 624.155, Florida Statutes.

3. Count II should be dismissed without prejudice as premature and for failure to state a cause of action because Plaintiff does not allege there has been a final determination of liability and damages pursuant to the Policy. Plaintiff's alleged bad faith cause of action has not accrued

and does not currently exist because there has not been a final determination as to liability and the extent of Plaintiff's damages.

4.     Furthermore, Count II of the Complaint should be dismissed because Plaintiff has failed to plead sufficient facts to support the asserted statutory bad faith claim as required under Fla. R. Civ. P. 1.110(b).

<p align="center">**MEMORANDUM OF LAW**</p>

## I.     STANDARD FOR DISMISSAL

A motion to dismiss pursuant to Florida Rule of Civil Procedure 1.140(b)(6) tests the sufficiency of the complaint and is not intended to determine issues of ultimate fact. *McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss*, 704 So. 2d 214, 215 (Fla. 2d DCA 1998). Rule 1.140(b)(6) allows for the dismissal of a complaint that fails to state a cause of action upon which relief can be granted. *Fox v. Prof'l Wrecker Operators of Florida, Inc.*, 801 So. 2d 175, 178 (Fla. 5th DCA 2001). In ruling on a motion to dismiss for failure to state a cause of action, the trial court is limited to reviewing the allegations contained within the four corners of the complaint. *Weiss*, 704 So. 2d at 215. The court must also consider the exhibits attached to the complaint. Fla. R. Civ. P. 1.130(b); *Abele v. Sawyer*, 750 So. 2d 70, 74 (Fla. 4th DCA 1999).

Additionally, under Florida Rule of Civil Procedure 1.110(b), a complaint must contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." In order to comply with rules 1.110(b) and 1.140(b)(6), the complaint must set out the elements of the cause of action as well as the facts supporting those elements. *Barrett v. City of Margate*, 743 So. 2d 1160, 1162 (Fla. 4th DCA 1999).

## II.     COUNT II MUST BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION BECAUSE THERE HAS BEEN NO DETERMINATION OF LIABILITY AND DAMAGES REGARDING PLAINTIFF'S UM CLAIM

a.      *Plaintiff's bad faith claim is premature.*

It is well-established under Florida law that a claim for bad faith does not accrue until there has been a determination of liability and damages in the underlying contract claim. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991); *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000); *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995); *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016).

As the Florida Supreme Court explained in *Blanchard*:

> [A]n insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.

*Blanchard*, 575 So. 2d at 1291. This also includes resolution of any appeals arising from the final judgment. *Lexington Ins. Co. v. Royal Ins. Co. of Am.*, 886 F. Supp. 837, 841-42 (N.D. Fla. 1995); *Michigan Millers Mut. Ins. Co. v. Bourke*, 581 So. 2d 1368, 1369-70 (Fla. 2d DCA 1991).

"[U]ntil a final judgment is entered the bad faith claim does not exist. . . . However, once a final judgment has been entered by the … judge then both liability and damages will have been established both of which are necessary to prosecute a claim against an insurer for bad faith." *Jenkins v. Allstate Ins. Co.*, No. 5:08-cv-285-Oc-10GRJ, 2008 WL 4934030 (M.D. Fla. Nov. 12, 2008). "Until such time as the … judge has entered a final judgment the damages will be uncertain and thus the bad faith claim cannot be prosecuted." *Id.*

Here, Plaintiff asserts the bad faith claim and UM claim in the same complaint. Without resolution of the underlying UM claim, there can be no final determination of liability and damages necessary to ripen the alleged bad faith cause of action. A trial court departs from the essential requirements of the law when it allows a first-party bad faith cause of action to proceed before a

final determination of liability and damages in the underlying UM case. *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635 (Fla. 2d DCA 2008); *Progressive Select Ins. Co. v. Shockley*, 951 So. 2d 20 (Fla. 4th DCA 2007). USAA is entitled to resolution of the underlying UM claim before any claim for bad faith may proceed against it.

A premature claim for bad faith would expose USAA to improper discovery of privileged information. Until there has been a final determination of liability and damages, a party is not entitled to bad faith discovery, such as the claim file and claims handling manuals. *See Gov't Employees Ins. Co. v. Rodriguez*, 960 So. 2d 794, 796 (Fla. 3d DCA 2007); *State Farm Mut. Auto. Ins. Co. v. Cook*, 744 So. 2d 567, 568 (Fla. 2d DCA 1999) ("[C]laims and litigation files are not subject to discovery until the bad faith claims are ripe."). "[D]iscovery which concerns only potential issues of bad faith or other purported improprieties in defending the claim are wholly impermissible unless and until it is determined that the policy indeed provides coverage." *Granada Ins. Co. v. Ricks*, 12 So. 3d 276, 277 (Fla. 3d DCA 2009).

b.    *The proper remedy is dismissal, not abatement.*

USAA recognizes a premature bad faith claim may be either dismissed without prejudice or abated until the underlying cause of action is resolved. *See Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1222 (Fla. 2016)[1]; *Landmark Am. Ins. Co. v. Studio Imports, Ltd., Inc.*, 76 So. 3d 963, 964-65 (Fla. 4th DCA 2011); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635-36 (Fla. 2d DCA 2008). Dismissal, rather than abatement, has been used by many Florida state and Federal courts. See *Harding v. Safeco Ins. of Illinois*, No. 5:15-CV-370-OC-40PRL, 2015

---

[1]    For clarification, while the Florida Supreme Court recently reiterated in *Fridman* that abatement is **an** appropriate procedural device, *Fridman* by no means changed longstanding Florida law holding that dismissal is also an appropriate remedy. *Fridman*, 185 So. 3d at 1229-1230. The Court's choice of using "***an*** appropriate procedural device" rather than "***the*** appropriate procedural device" underscores the Florida Supreme Court's intention to allow trial courts to continue to dismiss premature bad faith claims. *Fridman* still grants trial courts discretion to decide whether to abate <u>or</u> dismiss a premature bad faith claim.

WL 5828136 (M.D. Fla. Oct. 5, 2015) (dismissing a premature bad faith claim); *Wells v. State Farm Mut. Auto. Ins. Co.*, No. 8:13–cv–2355–T–27AEP, 2014 WL 3819436 (M.D. Fla. Mar. 18, 2014) (dismissing a premature bad faith claim); *Great Am. Assurance Co. v. Sanchuk, LLC*, No. 8:10–cv–2568–T–33AEP, 2012 WL 195526  (M.D. Fla. Jan. 23, 2012) ("When premature filing of an action cannot be cured by the passing of time—that is, when the claim is dependent upon the outcome of a separate action—dismissal without prejudice is preferred."); *Cox v. Nat'l Gen. Ins. Online, Inc.*, No. 8:15-CV-1924-T-33JSS, 2015 WL 5316966 (M.D. Fla. Sept. 11, 2015) (dismissing a premature bad faith claim).  As the Second District Court of Appeal explained in *Shuck v. Bank of Am., N.A.*, 862 So. 2d 20, 24-25 (Fla. 2d DCA 2003):

> The appropriate disposition of prematurely filed actions varies depending upon the circumstances that give rise to the premature element of the claim. . . .In cases where the premature element of an action is curable simply by the passage of time, Florida courts have generally disapproved dismissal of the action. Instead, the favored disposition is abatement of the action until the cause matures. . . .
>
> However, in other premature actions, the mere passage of time is not sufficient to cure the premature element of the action. An action may be premature because one of its essential elements is contingent upon the occurrence of an event that may or may not occur. In such cases, where the mere passage of time will not cure the premature element of the claim, abatement is not an appropriate disposition, and a dismissal is required.

(internal citations omitted); *see also Wells Fargo Ins. Servs. USA, Inc. v. Blackshear*, 136 So. 3d 1235, 1239 (Fla. 2d DCA 2014) ("We note that because the premature element of count five will not be cured by the passage of time . . . the appropriate remedy is dismissal of count five without prejudice, rather than an abatement of the count.").

Here, Plaintiff's bad faith claim will not accrue merely through the passage of time. The existence of a cause of action for bad faith is dependent upon the contingency of a final determination of liability and damages in favor of Plaintiff – an outcome that is not guaranteed.

Consequently, dismissal without prejudice is the required remedy. *See Blakely v. Safeco Ins. Co. of Illinois*, No. 6:13-cv-796-Orl-37TBS (M.D. Fla. June 26, 2013) (applying *Shuck* to dismiss premature bad faith action); *Ralston v. LM Gen. Ins. Co.*, No. 6:16-cv-1723-Orl-37DCI, 2016 U.S. Dist. LEXIS 155262, at *5 (M.D. Fla. Nov. 8, 2016) (dismissing premature bad faith claim because it rests upon contingent future events that may never occur); *Bele v. 21st Century Centennial Ins. Co.*, 126 F. Supp. 3d 1293, 1296 (M.D. Fla. 2015) (dismissing bad faith claim rather than abating because the claim may never actually accrue).

The Court should evaluate the respective prejudice the parties will suffer when deciding whether to abate or dismiss Plaintiff's premature bad faith claims. If the Court elects to dismiss the bad faith claim, Plaintiff will suffer no prejudice and can simply refile any ripened bad faith claim against USAA in a separate action once the underlying UM claim is resolved (assuming Plaintiff prevails in the underlying UM count). Further, dismissal of Plaintiff's bad faith claim will not require the parties to re-litigate the issue of damages in any subsequent bad faith action. *Fridman*, 185 So. 3d at 1216 (holding the determination of damages made in the underlying UM verdict is binding as an element of damages in a subsequent bad faith action against the same insurer); *see also GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 805 (Fla. 4th DCA 2014).

Furthermore, if this situation is viewed through simple pleading fundamentals, Plaintiff's bad faith claim violates Florida Rule of Civil Procedure 1.110.  Rule 1.110(b) states, in relevant part:

> **(b) Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim *must state a cause of action and shall contain* (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) *a short and plain statement of the ultimate facts showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief to which the pleader deems himself or herself entitled.

(*emphasis added*). As currently pled, Plaintiff's bad faith claim does not state a cause of action and does not contain the ultimate facts showing that the Plaintiff is entitled to relief. Plaintiff cannot cure this deficiency until the underlying UM claim is resolved. In any other context, a complaint that fails to allege all of the necessary elements to state a cause of action will be dismissed. The fact that abatement is even an option at all in handling unripe bad faith claims is a peculiarity of Florida law.

## III.   COUNT II SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FLORIDA RULE OF CIVIL PROCEDURE 1.110(b)

A pleading must contain a "short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110b). The purpose of this requirement is to inform the defendant of the nature of the cause against him. *See Naples Builders Supply Co. v. Clutter Const. Corp*., 152 So.2d 478, 479 (Fla. 3d DCA 1963)(*citing Kislak v. Kreedian*, 95 So.2d 510, 514 (Fla. 1957)("While the Rule of [Florida] Civil Procedure provides that the complaint shall be 03756656 sufficient if it informs the defendant of the nature of the cause against him, the complaint must sufficiently allege the ultimate facts which, if established by competent evidence, would support a decree granting the relief sought under the law."); *see also, Doyle v. Flex*, 210 So.2d 493 (Fla. 4th DCA 1968). In other words, a cause of action "must be alleged with sufficient particularity so that the trial judge in reviewing the ultimate facts may rule as a matter of law whether or not the facts alleged are sufficient for the inference that the pleader seeks to draw and are sufficient to state a cause of action." *Beckler v. Hoffman*, 550 So.2d 68, 71 (Fla. 5th DCA 1989). It is well settled that whether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact, excluding the bare conclusions of the plaintiff. *See Frank v. Laurie*, 157 So.2d 431, 433 (Fla. 2d DCA 1963); *Alvarez v. E & A Produce Corp*., 708 So.2d 998,

04697171

999-1000 (Fla. 2d DCA 1998); and *Koger v. Hollahan*, 198 So. 685, 688 (Fla. 1940). Courts are under no obligation to accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions or mere legal conclusions made by a party. *Shands Teaching Hosp. and Clinics, Inc. v. Estate of Lawson ex rel. Lawson*, 175 So.3d 327, 331 (Fla. 1st DCA 2015). After removing the allegations in a complaint that are merely conclusory statements or legal conclusions, the court must then take any remaining well-pleaded factual allegations and determine whether they plausibly give rise to entitlement of relief. Therefore, dismissal is appropriate where a complaint consists of only conclusory allegations, unsupported by specific factual allegations. *See Fowler v. Paradise Lakes Condominium Ass'n, Inc*., 133 So.3d 576 (Fla. 2d DCA 2014)(agreeing that Plaintiff's bare allegations were insufficient to surviving a motion to dismiss).

Here, Count II of Plaintiff's Complaint should also be dismissed because it simply recites the statutory language of § 624.155, F.S., and is a boiler-plate bad faith count which fails to provide any facts to support the allegation. [*See Complaint,* ¶ 21]. Count II of Plaintiff's Complaint contains no factual allegations to survive a motion to dismiss. Specifically, there are no facts in Count II supporting that Plaintiff is entitled to relief. Instead, Plaintiff has merely set forth the legal recitations of duties owed under § 624.155, F.S., along with conclusory allegations barren of any factual basis to support a statutory bad faith claim. For the reasons stated above, same is not sufficient to withstand dismissal. It appears that Plaintiff essentially seeks for this Court and for USAA to guess at the possibility that these events occurred, when they occurred, how they occurred, and with whom they occurred. *See Hogan v. Provident Life & Acc. Ins. Co*., 2009 WL 2169850, *6-7 (M.D. Fla. 2009)(dismissing plaintiff's bad faith claim finding plaintiff's recitation of Fla. Stat. § 624.155(1)(b)(1) was merely a conclusory statement, couched as a factual allegation, and was not entitled to a presumption of the truth*); See O'Boyle v. Bradshaw*, 952 F. Supp. 2d

1310, 1317 (S.D. Fla. 2013)("Plaintiff's allegation that she was 'wrongfully detained and arrested without probable cause,' is nothing but a conclusory statement that is insufficient to overcome a motion to dismiss under Rule 12(b)(6)"). Plaintiff is required under Fla. R. Civ. P. 1.110(b), to plead the necessary facts in support of her claim and has not. Accordingly, Count II of Plaintiff's Complaint should be dismissed.

WHEREFORE, USAA GENERAL INDEMNITY COMPANY respectfully requests this Honorable Court dismiss Count II of Plaintiff's Complaint without prejudice and further requests any other relief deemed appropriate by this Court.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by eService on June 28, 2022 to John C. Distasio, Esq. (john@floridalawgroup.org; service@floridalawgroup.org) 407 N. Howard Ave #100, Tampa, FL 33606.

BOYD & JENERETTE, P.A.

_____

AMANDA L. KIDD
Florida Bar No. 93229
JORDAN L. PARKER
Florida Bar No. 88766
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
904-353-6241 - Telephone
904-353-2863 - Facsimile
Attorneys for USAA
Primary Address for E-service:
efiling@boydjen.com

IN THE CIRCUIT COURT, TENTH
JUDICIAL CIRCUIT, IN AND FOR
POLK COUNTY, FLORIDA

CASE NO.:   2022-CA-001788
DIVISION:   07

CHERRY POPE,

      Plaintiff,

vs.

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

_____

## NOTICE OF HEARING

      **PLEASE TAKE NOTICE** that the above-styled cause shall be called up for hearing

before **The Honorable Catherine L. Combee, Polk Civil Division 07 Virtual Courtroom,** Polk

County Courthouse, 255 N. Broadway Ave., Bartow, Florida, on the following:

      **DATE:**      **Monday, August 15, 2022**
      **TIME:**      **3:30 p.m.**
      **MOTION:**    **Defendant USAA's Motion to Dismiss Count II (Insurance Bad Faith)**
                       **of Plaintiff's Complaint filed on June 28, 2022**
      **TIME RESERVED:   30 minutes**

      **PLEASE TAKE FURTHER NOTICE** that the above-noticed hearing shall take place remotely via Microsoft Teams Videoconferencing. To participate in the hearing, click the following: Click here to enter Polk Civil Division 07 Virtual Courtroom. The link is also accessible from Court Administration's web site through this procedure:  Navigate through the browser to http://www.jud10.flcourts.org/.  On the right side of the page, click "Click here for Polk County Virtual Courtroom Links", then click "Polk Circuit Civil", then click "Click here to enter Polk Civil Division 07 Virtual Courtroom".

04710030

**EXHIBITS:**  If any exhibits are to be introduced during the hearing, please consult with each other and discuss the exhibits prior to the hearing.  Please provide to the Court (copying opposing counsel), pre-marked exhibits, advising of any objections.  Exhibits should be provided in **hard copy via U. S. Mail, Express Mail or Hand Delivery**, at least 72 hours in advance of the hearing (excluding holidays and weekends).  Any exhibits provided after the specified date and time will be excluded unless good cause is shown.

---

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the Office of the Court Administrator, 255 N. Broadway Avenue, Bartow, Florida 33830, (863) 534-4686, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

---

### NOTICE REGARDING REMOTE PARTICIPATION

**OPTIONS FOR PARTICIPATION**

**Videoconference by computer or laptop:**  You must have a microphone and camera installed, email account, and reliable internet connection.  You may select "Join in Browser" without downloading software, or download the free Microsoft Teams app for better user experience.

**Videoconference by smartphone or tablet:**  You must have camera, microphone, reliable internet connection, and an email account.  Participation using a smartphone or tablet requires download of the free Microsoft Teams app.

**OTHER ADVISEMENTS**

All participants must appear by videoconference.

Participate from an indoor location free from excessive background noise.

If you are directed to a virtual lobby, please be patient until the case is called.

Mute your microphone upon entering the virtual courtroom and keep your microphone muted unless speaking.

Additional information may be found on the Tenth Judicial Circuit Website at http://www.jud10.flcourts.org/.  If you have questions or need additional support, please email Court Technology at 10thVirtualCourtSupport@jud10.flcourts.org, or call (863) 534-7788.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by eService on

July 6, 2022 to John C. Distasio, Esq. (john@floridalawgroup.org; service@floridalawgroup.org)

407 N. Howard Ave #100, Tampa, FL 33606.

BOYD & JENERETTE, P.A.

_____

AMANDA L. KIDD
Florida Bar No. 93229
JORDAN L. PARKER
Florida Bar No. 88766
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
904-353-6241 - Telephone
904-353-2863 - Facsimile
Attorneys for Defendant
Primary Address for E-service:
efiling@boydjen.com

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.      CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>TENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>POLK</u>  COUNTY, FLORIDA

<u>Cherry Pope</u>
Plaintiff                                                 Case # _____
                                                          Judge  _____

vs.
<u>USAA General Indemnity Company</u>
 Defendant

**II.     AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

2022CA-001788-0000-00        **Received in Polk 05/26/2022 04:01 PM**

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☒ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☒ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

2022CA-001788-0000-00        Received in Polk 05/26/2022 04:01 PM

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>2</u>

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**     **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ John Distasio</u>              Fla. Bar # <u>96328</u>
          Attorney or party                 (Bar # if attorney)

<u>John Distasio</u>              <u>05/26/2022</u>
  (type or print name)              Date



**Stacy M. Butterfield, CPA**
Clerk of Courts & Comptroller
Polk County, Florida

**Public Records Online**

**CASE INFORMATION**

**Printed as of 6/24/2022 by Public**

EXHIBIT
I

Case Number: **2022CA001788000000**

Judge: **CATHERINE L COMBEE**          Section:  **07**

**Parties**

| Party Type | Party Name | Attorney |
|---|---|---|
| DEFENDANT | USAA GENERAL INDEMNITY COMPANY | |
| PLAINTIFF | POPE, CHERRY | DISTASIO JOHN C |

**Dockets**

| Date | Action | Type | Pages | Sequence |
|---|---|---|---|---|
| 5/26/2022 | CIVIL COVER SHEET | CCS | 3 | 1 |
| 5/26/2022 | COMPLAINT | CO | 51 | 2 |
| 5/26/2022 | PLAINTIFF'S INTERROGATORIES TO DEFENDANT USAA GENERAL INDEMNITY COMPANY | NSI | 4 | 4 |
| 5/26/2022 | PLAINTIFF CHERRY POPE'S REQUEST FOR PRODUCTION TO DEFENDANT USAA GENERAL INDEMNITY COMPANY | RQP | 5 | 5 |
| 5/27/2022 | SUMMONS ISSUED BY CLERK - USAA GENERAL INDEMNITY COMPANY | SI | 1 | 3 |
| 6/8/2022 | SERVICE OF PROCESS SERVED- USAA GENERAL INDEMNITY COMPANY BY SERVING LYNETTE COLEMAN | SPS | 1 | 6 |
| 6/14/2022 | ORDER ESTABLISHING CIVIL CASE MANAGEMENT PLAN - STREAMLINED | OEPS | 3 | 7 |

No Hearing Data Available

**Public Records Online**

**CASE INFORMATION**

**Printed as of 6/24/2022 by Public**

Case Number:          **2022CA001788000000**

Judge:                     **CATHERINE L COMBEE**          Section:    **07**

**Receivables**

| Date | Receipt Amount | Description | Paying Customer | Receipt Number | Receivable Number |
|------|---------------|-------------|-----------------|----------------|-------------------|
| 5/27/2022 | $410.00 | Fees Assessed | EPORTAL - CIVIL LAW | 9178532 | |
| Balance Due | $0.00 | | | | |

No Disposition Data Available

No Reopen Data Available

Polk County Clerk of Courts